# EXHIBIT 1

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| In re:<br><br>CENTRAL GROCERS, INC., *et al*.,<br><br>     Debtor.<br><br>―――――――――――――――<br><br>HOWARD B. SAMUELS, solely as chapter 7 trustee of the estates of CENTRAL GROCERS, INC., et al.,<br><br>     Plaintiff,<br><br> v.<br><br>PETE'S FRESH MARKET 4343 CORP., et. al<br><br>     Defendants. | Adv. Pro. No. 19-01019<br><br><br>Case No. 17-13886<br>(Jointly Administered)<br><br>Chapter 7<br><br><br><br>Hon. Janet S. Baer |

## DEFENDANTS' PARTIAL MOTION TO DISMISS

Defendants[1] hereby move, under Federal Rule of Bankruptcy Procedure 7012 and Federal Rule of Civil Procedure 12(b)(6), to dismiss Counts 1, 3-7, 9-10, 12, 14, 16 and 18-19 of the Original Complaint (the "Complaint"), and in support thereof, state as follows:

---

[1] Defendants shall refer collectively to Pete's Fresh Market 4343 Corp., Pete's Fresh Market Madison Corp., Pete's Fresh Market 5724 Corp., Pete's Fresh Market Bridgeview Corp., Pete's Fresh Market 2526 Corp., Pete's Fresh Market 4700 Corp., West Lawn Foods, Inc., Pete's Fresh Market 118th Corp., Pete's Fresh Market Sibley Corp., 3720 West 95th Street, LLC, Pete's Fresh Market Oak Park Corp., Royale Liquors, LLC, and GM Warehouse, Inc.

# TABLE OF CONTENTS

I.    Preliminary Statement ................................................................................................ 1

II.   Applicable Law ......................................................................................................... 2

III.  Factual Background ................................................................................................... 3

IV.   Argument .................................................................................................................. 5

    A.    The Trust Cannot State A Cause Of Action For Turnover As Alleged In Court One Of His Complaint .......................................................................................... 5

    B.    The Trustee Cannot State Causes Of Action As Set Forth In Counts 3-7 Since The Patronage Rebate Was Not Property Of The Estate ................................................. 6

        i.    Applicable Law ..................................................................................... 7

        ii.   The 2016 Patronage Rebate Did Not Involve CGI's Property ............. 9

    C.    In Addition, The Trustee Cannot State A Cause Of Action For Counts Five and Six Since The Patronage Rebates Were Not Voluntary Payments ..................... 11

        i.    Applicable Law ................................................................................... 12

        ii.   The 2016 Patronage Rebate Was Not Voluntary ............................... 13

    D.    CGI Lacked Any Discretion To Divert The 2016 Patronage Rebate for Non-Rebate Uses .................................................................................................... 14

    E.    The Trustee Cannot State A Cause Of Action Under Counts Seven, Nine, Fourteen and Sixteen, Because The Defendants Were Not Insiders Of CGI ....... 16

        i.    The Trustee's Claims Require Insider Status .................................... 16

        ii.   The Trustee Has Not Sufficiently Alleged That Defendants Were Insiders ............................................................................................... 17

    F.    The Trustee Cannot State A Cause Of Action Under Counts Three, Five, Ten and Twelve, Because The Trustee Cannot Seek To Avoid An "Obligation" Which Has Already Been Paid .............................................................................................. 19

    G.    The Trustee Cannot State A Cause Of Action For Unjust Enrichment ................ 21

    H.    The Trustee Cannot Sustain A Cause Of Action For Disallowance Since Defendants Have Not Asserted A Proof Of Claim ............................................. 22

V.    Conclusion ............................................................................................................... 23

i

# TABLE OF AUTHORITIES

**Statutes**

*11* U.S.C. § 101 ........................................................................................................ 17, 18, 20
11 U.S.C. § 502 ...................................................................................................................... 22
11 U.S.C. § 541 ........................................................................................................................ 8
11 U.S.C. § 542 .................................................................................................................... 5, 6
11 U.S.C. § 544 ..................................................................................................... 11, 12, 16
11 U.S.C. § 547 .......................................................................................................... 7, 17, 18
11 U.S.C. § 548 ............................................................................................................... 7, 19
26 U.S.C. § 1382 .................................................................................................................... 13
26 U.S.C. § 1388 ........................................................................................... 4, 13, 14, 15
740 ILCS 160/2 .................................................................................. 7. 11, 12, 17, 18, 19, 20
740 ILCS 160/5 ........................................................................................ 7. 11, 12, 19, 20
740 ILCS 160/6 ............................................................................................................. 16, 181

**Rules**

FED. R. CIV. P. 12(b)(6) ................................................................. 1, 2, 7, 13, 18, 21, 22
FED. R. CIV. P. 12(f) ............................................................................................................. 22
FED. R. BANKR. P. 7012 ....................................................................................................... 2

**Cases**

*188 LLC v. Trinity Indus., Inc.*, 300 F.3d 730 (7th Cir.2002) ........................................... 3
*Affiliated Foods, Inc. v. Comm'r*, 128 T.C. 62,(T.C. 2007) ........................................ 9, 10
*Am. Box Shook Exp. Ass'n v. Comm'r*, 4 T.C. 758, 761 (T.C. 1945), *aff'd*, 156 F.2d 629 (9th Cir. 1946) .................................................................................................................................. 14
*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ................................................................. 2, 3, 17
*Begier v. I.R.S.*, 496 U.S. 53 (1990) ......................................................................... 7, 8
*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) .............................................................. 3
*Buckeye Countrymark, Inc. v. C.I.R.*, 103 T.C. 547 (T.C. 1994) ................................. 9, 10
*Certified Grocers, Inc. v. U.S.*, 18 AFTR 2d 5012, (M.D. Fla. 1966) ........................... 9, 10
*Cessna v. Rea Energy Coop., Inc.*, No. 3:16-42, 2016 WL 3963217 (W.D. Pa. July 21, 2016) .... 9
*Clover Farm Stores Corp. v. Comm'r*, 17 T.C. 1265 (T.C. 1952) ................................. 11
*Columbus Fruit & Vegetable Co-op. Ass'n, Inc. v. United States*, 7 Cl. Ct. 561 (Cl. Ct. 1985) .... 9
*Conway County Farmers Ass'n v. United States*, 588 F.2d 592 (8th Cir. 1978) ................... 10
*Cordes & Co., LLC v. Mitchell Companies, LLC*, 605 F. Supp. 2d 1015 (N.D. Ill. 2009) ................................................................................................... 12, 16
*Farmers Co-op. Co. v. Birmingham*, 86 F. Supp. 201 (N.D. Iowa 1949) ........................ 15
*FCX, Inc. v. S.C. Tax Comm'n*, 283 S.C. 142 (S.C. Ct. App. 1984) ............................... 9, 15
*Gagnon v. Schickel*, 2012 IL App (1st) 120645 ................................................................ 21
*Harbor Plywood Corp. v. C.I.R.*, 14 T.C. 158 (T.C. 1950), *aff'd*, 187 F.2d 734 (9th Cir. 1951) ........................................................................................................................ 10
*HPI Health Care Services, Inc. v. Mt. Vernon Hosp., Inc.*, 131 Ill. 2d 145 (1989) ............... 21
*In re 4100 W. Grand LLC*, 481 B.R. 444 (Bankr. N.D. Ill. 2012) ......................................... 8
*In re Cent. Illinois Energy Co-op.*, 521 B.R. 868 (Bankr. C.D. Ill. 2014) .......................... 19
*In re FLR Co., Inc.*, 58 B.R. 632 (Bankr. W.D. Pa. 1985) ............................................... 6
*In re Gainey Corp.*, 481 B.R. 264 (B.A.P. 6th Cir. 2012) ............................................... 20
*In re Glob. Aviation Holdings Inc.*, 478 B.R. 142 (Bankr. E.D.N.Y. 2012) ...................... 18

*In re Kaiser*, 525 B.R. 697 (Bankr. N.D. Ill. 2014) .............................................................. 12, 16

*In re Knippen*, 355 B.R. 710 (Bankr. N.D. Ill. 2006) ................................................................ 8

*In re Pantazelos*, 543 B.R. 864 (Bankr. N.D. Ill. 2016) ........................................................... 5

*In re Royal Bus. Sch., Inc.,* 157 B.R. 932 (Bankr. E.D.N.Y. 1993) ............................................ 8

*In re Sardo Corp.*, No. 91 B 09826, 1996 WL 362756 (Bankr. N.D. Ill. June 11, 1996) ............. 5

*In re TOUSA, Inc.*, No. 09-60589-CIV, 2011 WL 1627129 (S.D. Fla. Mar. 4, 2011) ................. 20

*In re USA United Fleet, Inc.*, 559 B.R. 41 (Bankr. E.D.N.Y. 2016) .......................................... 22

*In re Wade*, 969 F.2d 241 (7th Cir. 1992) ................................................................................. 3

*In re Wayco, Inc.*, 947 F.2d 1330 (7th Cir. 1991) .................................................................. 8, 9

*Ogden Martin Sys. of Indianapolis, Inc. v. Whiting Corp.*, 179 F.3d 523 (7th Cir. 1999) ............. 3

*Petaluma Co-Operative Creamery v. Comm'r*, 52 T.C. 457 (T.C. 1969) ............................. 11, 14

*Shakman v. Dep't of Revenue*, 2019 IL App (1st) 182197 ........................................................ 20

*Smith & Wiggins Gin, Inc. v. Comm'r*, 341 F.2d 341 (5th Cir. 1965) ......................................... 14

*Stevenson Co-Ply Inc. v. Comm'r*, 76 T.C. 637 (T.C. 1981) ...................................................... 13

*Union Equity Coop. Exch. v. Comm'r*, 58 T.C. 397 (T.C. 1972), *aff'd*, 481 F.2d 812 (10th Cir. 1973) ......................................................................................................................... 14

*United Cooperatives, Inc. v. Comm'r*, 4 T.C. 93 (T.C. 1944) .................................................... 15

*United States v. Mississippi Chem. Co.*, 326 F.2d 569 (5th Cir. 1964) ........................... 11 14, 15

*Yassan v. J.P. Morgan Chase & Co.*, 708 F.3d 963 (7th Cir. 2013) ............................................ 3

# I.  **PRELIMINARY STATEMENT**

1.     The Trustee has apparently left *"no cause of action behind"* when he drafted and filed his Complaint.  It appears that the Trustee believes the more causes of action he asserts the higher likelihood of obtaining a successful outcome.  However, in contrast, the Trustee has only done himself, the Defendants and the Court a disservice by including unsupported causes of action that simply obfuscate the Defendants and the Court from the material facts involving this case.  As such, this Court should dismiss thirteen of the nineteen counts, under Rule 12(b)(6), for the Trustee's failure to state a claim upon which relief can be granted.

2.     Defendants are grocery stores that were members of Central Grocers, Inc. ("CGI"), a wholesale grocery cooperative.  The Trustee asserts nineteen causes of action against Defendants arising out of that relationship.  (Dkt. 1).  Counts 1, 3-7, 9-10, 12, 14, 16 and 18-19 should be dismissed with prejudice.

- Count 1 should be dismissed because the Trustee is seeking to assert a turnover under 11 U.S.C. § 542(b) against the Defendants' for their purported refusal to turnover funds owed for alleged unpaid receivables.  (Dkt. 1 at ¶¶ 42-49).  However, a court cannot apply a turnover as a method to determine the disputed rights of parties.  Turnover is a remedy to obtain property from a third party after such property is acknowledged to be property of the estate.  The Trustee cannot transform a breach of contract action into a turnover proceeding.  As a consequence, Count I should be dismissed.

- Counts 3-7 should likewise be dismissed.  In these counts, the Trustee asserts claims under 11 U.S.C. § 548(a)(1)(B), 11 U.S.C. § 547(b), and 740 ILCS 160/5(a)(2).  (Dkt. 1 at ¶¶ 60-96).  However, the Trustee cannot prevail on these claims since the 2016 Patronage Rebates were not property of CGI's estate.  (*See,* CGI's By-Laws.) (Dkt. No. 1-3).  Thus, since the 2016 Patronage Rebates were never part of the Debtor's estate, this Court should dismiss Counts 3-7.

- Counts 5 and 6 (in addition to the reasons stated above) must be dismissed because the purported transfers were not voluntary.  CGI's By-Laws establish that the Patronage Rebates were compulsory and thus not subject to Defendants' discretion.  (See Dkt. 1-3).

- Counts 7, 9, 14, and 16, must be dismissed because the Defendants were **not**

1

insiders of CGI.  Thus, the Trustee cannot assert causes of action under 740 ILCS 160/6(b) and 11 U.S.C. § 547(b)(4).  (Dkt. 1 at ¶¶ 88-96, 104-12, 141-49, 157-65).  As such, counts 7, 9, 14 and 16 must be dismissed.

- Counts 3, 5, 10, 12, must also be dismissed since the Trustee is seeking the avoidance of "fraudulent obligations" under 11 U.S.C. § 548(a)(1)(B) and 740 ILCS 160/5.  However, although the Trustee putatively seeks the avoidance of "fraudulent obligations," the Trustee does not allege **any** obligations to avoid.  On the contrary, in Counts 3, 5, 10, and 12, the Trustee seeks to avoid *transfers*, making these counts wholly duplicative.  Accordingly, as pleaded, Counts 3, 5, 10, and 12 concern only *transfers* as opposed to *future obligation*.  As such, the Trustee has, thus, failed to state a claim for the avoidance of fraudulent *obligations*, and therefore, this Court should dismiss Counts 3, 5, 10 and 12.

- Count 18 must be dismissed because the Trustee cannot sustain a cause of action for unjust enrichment for payments made from CGI to Defendants.  (Dkt. 1 at ¶¶ 170-74).  Unjust enrichment is inapplicable when an express contract governs.  The Trustee pleads that the "Purchasing Agreement" governed the Unpaid Receivable and the By-laws governed patronage rebates.  Accordingly, the Trustee has not stated an unjust enrichment claim with respect to the Unpaid Receivable or 2016 Patronage Rebate.

- Count 19 must be dismissed because the Trustee cannot seek the disallowance of Defendants' claims under 11 U.S.C. § 502(d), since none of the Defendants have filed a Proof of Claim.

As such, for the reasons articulated above and more fully set forth below, this Court should dismiss Counts 1, 3-7, 9-10, 12, 14, 16 and 18-19, with prejudice and without costs.

## II.   APPLICABLE LAW

3.     A motion to dismiss under Rule 12(b)(6), made applicable here by Federal Rule of Bankruptcy Procedure 7012, challenges the sufficiency of a complaint "to state a claim upon which relief can be granted."  FED. R. CIV. P. 12(b)(6).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

4.     "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss."  *Iqbal*, 556 U.S. at 679.  "A claim has facial plausibility when the plaintiff pleads

factual content that allows the court to draw the reasonable inference that the defendant is liable

for the misconduct alleged." *Id*. at 678.  This standard "asks for more than a sheer possibility"

that the defendant is liable.  *Id*.  "Determining whether a complaint states a plausible claim for

relief will ... be a context-specific task that requires the reviewing court to draw on its judicial

experience and common sense.  But where the well-pleaded facts do not permit the court to infer

more than the mere possibility of misconduct, the complaint has alleged—but it has not

'show[n]'—'that the pleader is entitled to relief.'" *Id*. at 679 (*qu*., *Twombly*, 550 U.S. at 557).

5.      Although a court must accept as true all well-pleaded allegations in a complaint, it

need not accept legal conclusions as true.  *Iqbal*, 556 U.S. at 678.  Similarly, "threadbare recitals

of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*

6.      "At the dismissal stage, the court is typically confined to the pleadings alone, but

'[i]t is ... well-settled in this circuit that documents attached to a motion to dismiss are considered

part of the pleadings if they are referred to in the plaintiff's complaint and are central to his

claim.'" *Yassan v. J.P. Morgan Chase & Co*., 708 F.3d 963, 975 (7th Cir. 2013) (quoting *188

LLC v. Trinity Indus., Inc.*, 300 F.3d 730, 735 (7th Cir.2002) (internal quotations omitted).  To

the extent that a contract attached to a complaint is inconsistent with the complaint's allegations,

the contract controls.  *Ogden Martin Sys. of Indianapolis, Inc. v. Whiting Corp*., 179 F.3d 523,

529 (7th Cir. 1999).  Accordingly, "[a] plaintiff may plead himself out of court by attaching

documents to the complaint that indicate that he or she is not entitled to judgment." *Id.* (quoting

*In re Wade*, 969 F.2d 241, 249 (7th Cir. 1992)).

### III.    <u>FACTUAL BACKGROUND</u>

7.      CGI consisted of a group of independently owned grocery stores that pooled their

buying power to purchase groceries in bulk at reduced prices from vendors.  (Dkt. 1 at ¶ 20; Dkt.

1-3).  CGI returned to each member store, in the form of "patronage rebates," the amount each

member paid in excess of CGI's cost of groceries (less certain administrative expenses of

running CGI).  (Dkt. 1-3).  CGI paid these patronage rebates (which the Trustee terms

"dividends") after the end of each fiscal year in direct relation to the amount of groceries

purchased by any individual member store.[2]  (*Id*.).  Member stores relied on discounted prices

they were able to realize through GCI's bulk purchases, as well as the patronage rebates to

enable them to offer their own customers discounted prices that would have otherwise been

unprofitable.

8.     CGI's By-laws *required* CGI to distribute patronage rebates annually, and in a

particular manner.[3]  Specially, CGI's By-laws provide:

> The Corporation <u>*shall*</u> distribute to qualifying Members and
> Patrons as Patronage Rebates all of the Corporation's Rebateable
> Net Income … no later than eight and a half (8½) months
> following the end of the fiscal year.  ***<u>It is intended that Patronage
> Rebates qualify as "patronage dividends" within the meaning of
> Section 1388(a) of the Internal Revenue Code of 1986, as
> amended.</u>***

(Dkt. 1-3, at Article XII, Section 2 – Patronage Rebates).  As such (and discussed in more detail

below) for such rebates to qualify as patronage dividends within the meaning of Section 1388(a),

the Directors – by law – lacked the discretion to divert such payments away from its members.

Such discretion would disqualify these funds under Section 1388(a) and would therefore create

$44.5 million of taxable income to CGI.  CGI obligated itself (at the latest) at the start of each

fiscal year, *i.e.,* before a particular patron even began transacting annual business with the

cooperative – to provide a rebate on the patron's purchases.  Throughout the year, CGI would

---

[2] The terms "patronage dividend" and "patronage rebate" are interchangeable.  Here, we use the term "patronage rebate" or "2016 Patronage Rebate" so as to distinguish patronage rebates from stock dividends.

[3] The Trustee attaches the By-laws to the Complaint as Exhibit B.  (Dkt. 1-3).

hold those accrued patronage rebates in trust for the benefit of the patrons, and then return those funds to the patrons after the end of each fiscal year. If the Directors retained ***any*** discretion to divert these funds away from its members then all of the $44.5 million it received in rebates would become taxable income to CGI. Therefore, since CGI's payment of the patronage rebate was mandatory under its bylaws, such payments cannot qualify as voluntary under the UFTA.

9.       In this action, the Trustee seeks the return from Defendants of $267,813.69 that they received as part of this 2016 Patronage Rebate, and $185,211.06 that they received as part of the 2016 Vendor Rebate. (Dkt. 1 at ¶ 35). In addition, the Trustee alleges that, by the petition date, "Defendants had received, but had not paid for, goods on account from CGI in the amount of $1,651,991.25." (*Id.* at ¶ 32). The Trustee contends that this constituted a breach of a "Purchasing Arrangement" that Defendants had with CGI. (*Id.* at ¶ 33).

## IV.   <u>ARGUMENT</u>

### A.   <u>THE TRUST CANNOT STATE A CAUSE OF ACTION FOR TURNOVER AS ALLEGED IN COURT ONE OF HIS COMPLAINT</u>

10.       In Count 1, the Trustee asserts a turnover claim under 11 U.S.C. § 542(b). (Dkt. 1 at ¶¶ 42-49). Turnover, however, is inapplicable to this disputed contract claim.

11.       Section 542(b) provides, "an entity that owes a debt that is property of the estate and that is matured, payable on demand, or payable on order, shall pay such debt to, or on the order of, the trustee …." 11 U.S.C. § 542. Turnover, however, "is not a method to determine the disputed rights of parties"; rather, it is a remedy to obtain property that is acknowledged to be property of the estate. *In re Pantazelos*, 543 B.R. 864, 876 (Bankr. N.D. Ill. 2016). "[T]he Trustee cannot transform a breach of contract action into a turnover proceeding…. '[t]urnover, 11 U.S.C. § 542, is not the provision of the Code to determine the rights of the parties in legitimate contract disputes.'" *In re Sardo Corp.*, No. 91 B 09826, 1996 WL 362756, at *14–15

(Bankr. N.D. Ill. June 11, 1996) (quoting *In re FLR Co., Inc.*, 58 B.R. 632, 634 (Bankr. W.D. Pa. 1985)). "[T]he parameters of the definition of a turnover proceeding do not include actions to collect disputed accounts receivables or breach of contract actions." *Id.* (collecting cases).

12.    Here, the Trustee seeks turnover of the Unpaid Receivable. (Dkt. 1 at ¶ 49). Based on the Trustee's own allegations, however, the Unpaid Receivable is a disputed account receivable, and it will only become payable if and when the Trustee succeeds on his breach of contract claim under Count 2. (*Id.* at ¶ 33) ("Defendants' failure to remit payment for the Unpaid Receivable … *constituted [a] material breach[]* of the Purchasing Arrangement, the Membership Agreement, the By-Laws, and the Rules & Regulations.") (emphasis added). Defendants vigorously dispute that the CGI Estate has any right to the Unpaid Receivable. The proper way to resolve the dispute over the Unpaid Receivable, however, is by litigating Trustee's breach of contract claim in Count 2, not by invoking Section 542(b) of the Bankruptcy Code.

13.    For these reasons, the Trustee has failed to state a plausible claim for relief under 11 U.S.C. § 542(b). Defendants respectfully request the Court to dismiss Count 1 under Rule 12(b)(6).

**B.**    **THE TRUSTEE CANNOT STATE CAUSES OF ACTION AS SET FORTH IN COUNTS 3-7 SINCE THE PATRONAGE REBATE WAS NOT PROPERTY OF THE ESTATE**

14.    The Trustee cannot prevail under the statutes at issue in Counts 3-7 unless the subject transfers or obligations involved CGI's property. These Counts all pertain, however, to the 2016 Patronage Rebate. The By-laws attached to the Complaint – which control over the allegations in the Complaint – establish that the 2016 Patronage Rebate did not involve CGI's property. (*See* Dkt. No. 1-3). The Trustee, therefore, has failed to state a plausible claim for relief under the statutes at issue in Counts 3-7.

6

### i.   **Applicable Law**

15.     In Counts 3 and 4, the Trustee asserts fraudulent obligation and fraudulent transfer claims under 11 U.S.C. § 548(a)(1)(B).  (Dkt. 1 at ¶¶ 60-73).  In Counts 5 and 6, the Trustee asserts fraudulent transfer and fraudulent obligation claims under 740 ILCS 160/5(a)(2). (*Id.* at ¶¶ 74-87).  In Count 7, the Trustee asserts a preferential transfer claim under 11 U.S.C. § 547(b).  (*Id.* at ¶¶ 88-96).

16.     It is axiomatic that the reach of a trustee's avoidance power under both 11 U.S.C. § 548(a)(1)(B) and 740 ILCS 160/5(a)(2) is limited to property belonging to the debtor.  Section 548(a)(1) provides that a trustee may avoid only a transfer "of an interest of the debtor in property."  11 U.S.C. § 548(a)(1)(B); *In re 4100 W. Grand LLC*, 481 B.R. 444, 454 (Bankr. N.D. Ill. 2012) (holding that to succeed under Section 548(a)(1)(B), a trustee needs to establish, among other things, that there was "a transfer of the debtor's property").  "Because § 548 of the Bankruptcy Code and § 160/5 of the UFTA are analogous, the findings made with respect to § 548(a)(1)(B) apply equally to the requirements of § 160/5(a)(2)."[4]  *In re Knippen*, 355 B.R. 710, 735 (Bankr. N.D. Ill. 2006).  Similarly, to succeed under Section 547(b), the Trustee will need to establish that there was a "transfer of an interest of the debtor in property."  11 U.S.C. § 547(b).

17.     To determine whether a particular pre-petition transaction involved a debtor's property, a court must ascertain whether the transaction involved property that would have been included in the debtor's bankruptcy estate but for the transfer.  As the Supreme Court explained in *Begier v. I.R.S.*, 496 U.S. 53, 58-59 (1990), "the purpose of the [trustee's] avoidance [power] is to preserve the property includable within the bankruptcy estate – the property available for distribution to creditors."  Accordingly, in the context of a trustee's avoidance powers, the

---

[4] Moreover, Section 160/5(a)(2) plainly only applies to the "property of a debtor." 740 ILCS 160/2(b) & (l); 740 ILCS 160/5(a). Thus, a transaction must involve the debtor's property before it can possibly qualify as a fraudulent transfer under either Section 548(a)(1)(B) or Section 160/5(a)(2).

concept of "property of the debtor … is best understood as that property that would have been part of the estate had it not been transferred before the commencement of bankruptcy proceedings." *Id.* A court must, therefore, look to the Bankruptcy Code's definition of property of the estate in Section 541 to determine whether a particular pre-petition transaction involved property of the debtor. *Id.*

18.     Section 541 provides that property of the estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). Nevertheless, "not all property interests of the debtor are intended to be included as property of the estate." *In re Royal Bus. Sch., Inc.,* 157 B.R. 932, 940–41 (Bankr. E.D.N.Y. 1993). For example, Congress excluded from the debtor's estate "property of others in which the debtor has some minor interest such as a lien or bare legal title." *Id.* To make this point abundantly clear, Section 541(d) specifically states:

> Property in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest ... becomes property of the estate … only to the extent of the debtor's legal title to such property, but not to the extent of any equitable interest in such property that the debtor does not hold. 11 U.S.C. § 541(d).

19.     Based on Section 541, courts have consistently held that property held in trust by a debtor for the benefit of another is not property of the debtor or its estate. For instance, in *Begier*, the Supreme Court held a trustee could not avoid transfers a debtor made on the eve of bankruptcy from its operating account to the I.R.S. for employment taxes because, prior to the transfers, the debtor was merely holding such taxes in trust for the benefit of the I.R.S. *Begier*, 496 U.S. at 58-59. According to the Supreme Court, the employment taxes held in the debtor's operating account were never property of the debtor "[b]ecause the debtor [did] not own an equitable interest in [them]." *Id.* Similarly, in *In re Wayco, Inc.*, 947 F.2d 1330, 1332–33 (7th

Cir. 1991), the Seventh Circuit held that tenant security deposits were not the property of their landlord's bankruptcy estate because the landlord was merely holding the security deposits in trust for the benefit of its tenants.  In the words of the Seventh Circuit, the landlord "had no property interest in the security deposits…because title to the funds remain[ed] in the tenants." *Id*

### ii.    The 2016 Patronage Rebate Did Not Involve CGI's Property

20.    Here, Defendants retained title to the 2016 Patronage Rebate at all times.  The money returned to a patron as a patronage rebate is at no time property of the cooperative, and at all times property of the patron.

21.    Money distributed as a patronage rebate is not included in the gross income of a cooperative, under the theory that the cooperative is merely a conduit or a trustee for the rebates, which "are at all times the property of the member stockholders." *Columbus Fruit & Vegetable Co-op. Ass'n, Inc. v. United States*, 7 Cl. Ct. 561, 564 (Cl. Ct. 1985) (quotations omitted).  "The money involved *never belongs to the cooperative*." *Id*. (emphasis added).  Numerous decisions reflect this treatment:

- *Cessna v. Rea Energy Coop., Inc.*, No. 3:16-42, 2016 WL 3963217, at *1 (W.D. Pa. July 21, 2016) ("Because the Patronage Capital does not become Defendant's property, Defendant acts merely as the agent or trustee of the members to account for the Patronage Capital *that belongs to them*.") (emphasis added);

- *Affiliated Foods, Inc. v. Comm'r*, 128 T.C. 62, 85 (T.C. 2007) ("'Under the so-called agency theory, the cooperative should never be taxed because it is conceived of as an agent, bailee, or trustee for the patrons, serving merely as a conduit for their income which it does not own.'") (quoting *Certified Grocers, Inc. v. U.S.*, 18 AFTR 2d 5012, 66–2 USTC ¶ 9493 (M.D. Fla. 1966));

- *Buckeye Countrymark, Inc. v. C.I.R.*, 103 T.C. 547, 558 (T.C. 1994) ("[The tax treatment of patronage rebates] reflects the notion that the cooperative is merely an agent for its patrons and that the money returned to patrons as patronage dividends in fact *always belonged to them*.") (emphasis added);

- *FCX, Inc. v. S.C. Tax Comm'n*, 283 S.C. 142, 147 (S.C. Ct. App. 1984) ("The exclusion [for patronage rebates] was based on the theory that the cooperative was

9

merely a conduit for the members.… Our law does not treat profits as income of a taxpayer if they lawfully belong to another.");

- *Conway County Farmers Ass'n v. United States*, 588 F.2d 592, 596 (8th Cir. 1978) ("patronage dividends to members [are] deducted (on the apparent theory that the moneys involved had never in reality belonged to the organizations)."); and

- *Harbor Plywood Corp. v. C.I.R.*, 14 T.C. 158, 161 (T.C. 1950), *aff'd*, 187 F.2d 734 (9th Cir. 1951) ("[P]atronage dividends or rebates are at all times the property of the member stockholders, and nonmembers, and … the selling association is an agent or trusted or mere conduit for the income.").

22. CGI's Articles of Incorporation, attached as an exhibit and incorporated into the Complaint, also reflect this agency arrangement. (Dkt. 1-4). The Articles of Incorporation provide that the purpose of CGI is "*to act as agent* … with reference to food and grocery products, etc., in the efficient and economical producing, assembling, grading, handling, shipping, marketing, buying and selling of the same, and to do anything that will reduce the cost of salable merchandise to the member retail grocers." (*Id.*, at Article III(d) (emphasis added)).

23. Under a related theory, patronage rebates are treated as price adjustments (*i.e.*, as though the seller had given the patron a rebate at the time of sale) such that the patronage rebate funds never become property of the cooperative:

- *Affiliated Foods, Inc. v. Comm'r*, 128 T.C. 62, 85 (T.C. 2007) ("when, as added consideration for a sale, a seller rebates part of a customer's purchase price or pays that customer cash from a separate account, the amount of the rebate is … a reduction of selling price …. The seller is treated as if it never received more than the net selling price (i.e., the stated selling price, less the rebate); the amount of the rebate is excluded from the seller's gross income.") ("'[T]he so-called price adjustment theory excludes patronage dividends from income because it treats the dividends as minor adjustments in the costs of goods, analogous to discounts and rebates given by a seller at the time of sale or upon prompt payment.'") (quoting *Certified Grocers*, 18 AFTR 2d 5012, 66-2 USTC ¶ 9493).

- *Buckeye Countrymark,* 103 T.C. at 558 ("Patronage dividends are considered rebates on purchases or deferred payments on sales, allocated or distributed pursuant to a preexisting obligation of the cooperative, and, as such, do not constitute taxable income to the cooperative.");

- *Petaluma Co-Operative Creamery v. Comm'r*, 52 T.C. 457, 465 (T.C. 1969) ("The theory is that such dividends are in reality rebates or refunds upon business transacted by the corporation with its shareholders.");

- *United States v. Mississippi Chem. Co.*, 326 F.2d 569, 573 (5th Cir. 1964) ("patronage dividends are in reality rebates on purchases or deferred payments on sales allocated or distributed pursuant to a pre-existing obligation of the cooperative, and thus do not constitute taxable income to the cooperative.");

- *Clover Farm Stores Corp. v. Comm'r*, 17 T.C. 1265, 1277 (T.C. 1952) (holding that patronage rebates "are in reality rebates or refunds upon business transacted by the corporation with its stockholders or members, where it was committed to make such refunds, and that the amounts thus repaid never should have been included in income in the first instance.").

24.    Under either theory, the result is the same:  the money returned to a patron as a patronage rebate was at no time property of the cooperative and was at all times property of the patron.

25.    Because CGI's By-laws and Articles of Incorporation establish that the 2016 Patronage Rebate did not involve CGI's property, the Trustee has failed to state a plausible claim for relief under the statutes at issue in Counts 3-7.  Defendants, therefore, respectfully request the Court to dismiss Counts 3-7 under Rule 12(b)(6).

C.    **IN ADDITION, THE TRUSTEE CANNOT STATE A CAUSE OF ACTION FOR COUNTS FIVE AND SIX SINCE THE PATRONAGE REBATES WERE NOT VOLUNTARY PAYMENTS**

26.    In Counts 5 and 6, the Trustee asserts fraudulent transfer and fraudulent obligation claims, under both 11 U.S.C. § 544(b)(1) and 740 ILCS 160/5(a)(2), with respect to the 2016 Patronage Rebate.  (Dkt. 1 at ¶¶ 74-87).  To prevail under 740 ILCS 160/5(a)(2), the subject transfers or obligations must be voluntary.  Although the Trustee alleges that 2016 Patronage Rebate was voluntary (Dkt. 1 at ¶ 26), the By-laws attached to the Complaint – which control over the allegations in the Complaint – establish that the patronage rebate transfers and obligations were not voluntary.  (Dkt. 1-3).  The Trustee has, therefore, failed to state a plausible

11

claim for relief under 740 ILCS 160/5(a)(2).

### i.  **Applicable Law**

27.　　Section 544(b)(1) provides that "the trustee may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502 of this title or that is not allowable only under section 502(e) of this title." 11 U.S.C. § 544. This statute enables a trustee to do in a bankruptcy proceeding, for the benefit of the estate, what a creditor would be able to do outside of bankruptcy under state law. *In re Kaiser*, 525 B.R. 697, 708 (Bankr. N.D. Ill. 2014).

28.　　The state law at issue is 740 ILCS 160/5(a)(2), which provides:

> (a) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:
>
> ***
>
> > (2) without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:
> >
> > > (A) was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or
> > >
> > > (B) intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due.

740 ILCS 160/5. "Under Section 160/5(a)(2), four elements must be present: (1) the transferor *made a voluntary transfer*; (2) at the time of the transfer, the transferor had obligations elsewhere; (3) the transferor made the transfer without receiving a reasonably equivalent value in exchange; and (4) after the transfer the transferor failed to retain sufficient property to pay his indebtedness." *Cordes & Co., LLC v. Mitchell Companies, LLC*, 605 F. Supp. 2d 1015, 1021

(N.D. Ill. 2009) (emphasis added).    The patronage rebate transfers at issue here were compulsory, not voluntary.

### ii.    The 2016 Patronage Rebate Was Not Voluntary

The Bylaws – which control over inconsistent allegations in the Complaint establish that CGI was legally obligated to pay the 2016 Patronage Rebate. CGI's Bylaws required it to remit patronage rebates in accordance with the Internal Revenue Code, which required CGI to become legally obligated to pay the rebate ***before*** conducting business with any members or patrons.

As noted above, CGI's Bylaws required the annual Patronage Rebates to "qualify as 'patronage dividends' *within the meaning of Section 1388(a) of the Internal Revenue Code of 1986, as amended.*" (*Id.*) (emphasis added). The Bylaws' dependency on Section 1388(a) is crucial because, if a payment to a cooperative's patrons qualifies under Section 1388(a), then the cooperative can, for tax purposes, exclude those funds from its gross income, thereby reducing its taxes and maximizing the cost reduction to patrons. 26 U.S.C. § 1382(b).

To qualify under Section 1388(a), a cooperative must become legally obligated to pay a patronage rebate *before* patrons transact business with the cooperative.[5] 26 U.S.C. § 1388(a)(2) (providing that a cooperative must make payments to patrons "under an obligation of such organization to pay such amount, which obligation existed before the organization received the amount so paid"). Numerous decisions confirm this requirement:

- *Stevenson Co-Ply Inc. v. Comm'r*, 76 T.C. 637, 644–45 (T.C. 1981) (holding "[p]atronage dividends are payments made to members of a cooperative pursuant to a preexisting legal obligation between the cooperative and its members to the extent that the income distributed is attributable to business done with or for its members and is determined by reference to the organization's net earnings") (citations omitted);

---

[5] Section 1388(a) sets forth two additional requirements, but only the pre-existing obligation requirement of Section 1388(a)(2) is relevant here.

- *Union Equity Coop. Exch. v. Comm'r*, 58 T.C. 397, 403 (T.C. 1972), *aff'd*, 481 F.2d 812 (10th Cir. 1973) (holding "[a]n allocation of earnings by a cooperative to its patrons will not qualify as a true patronage dividend unless … the allocation [is] made pursuant to a legal obligation which existed at the time the participating patrons transacted their business with the cooperative");

- *Petaluma Co-Operative Creamery v. Comm'r*, 52 T.C. 457, 465 (T.C. 1969) (holding "[s]ince the corporation is under an obligation to make the refunds, the corporation need not initially include the amounts in gross income");

- *Smith & Wiggins Gin, Inc. v. Comm'r*, 341 F.2d 341, 350 (5th Cir. 1965) (holding "the test is the existence of a legally enforceable obligation to pay patronage refunds which existed during the period when such refunds were earned");

- *United States v. Mississippi Chem. Co.*, 326 F.2d 569, 571 (5th Cir. 1964) (holding "[w]hen a legally enforceable obligation exists to refund to qualified purchasers (stockholder-patrons) their proportionate share of gross receipts above costs and operating expenses based upon their respective purchases, such receipts are income of the patron and not income of the cooperative and consequently are to be excluded in the computation of the cooperative's gross income"); and

- *Am. Box Shook Exp. Ass'n v. Comm'r*, 4 T.C. 758, 761 (T.C. 1945), *aff'd*, 156 F.2d 629 (9th Cir. 1946) (holding "[i]n order to be a true cooperative, there must be a legal obligation on the part of the association to return to the producers, on a patronage basis, all funds received in excess of the cost of the goods sold").

Thus, to qualify under Section 1388(a), CGI became legally obligated to pay the 2016 Patronage Rebate at the beginning of the 2016 fiscal year (*i.e.*, August 1, 2015), or at an even earlier time when CGI approved the rebate program.[6] By September 2016, the payment of the 2016 Patronage Rebate was mandatory. If CGI failed to satisfy the Patronage Rebate then the entire alleged $44.5 paid to CGI's members would have been taxable income to CGI.

### D.    CGI LACKED ANY DISCRETION TO DIVERT THE 2016 PATRONAGE REBATE FOR NON-REBATE USES

CGI lacked the discretion to divert the 2016 Patronage Rebate away from the Defendants. If CGI truly possessed such discretion (and it did not), none of the funds it remitted to patrons would qualify as patronage rebates under the Internal Revenue Code. A cooperative must have a

---

[6] CGI's patronage rebate program had been in place in the same form since at least 2012. (*See* Ex. A at p. 1).

pre-existing obligation to pay a patronage rebate at the time a patron purchases through the

cooperative, a cooperative lacks any discretion to divert patronage rebate funds for other

purposes. To the extent a cooperative has discretion to divert net earnings to purposes other than

the payment of patronage rebates, that means there is no pre-existing obligation, and the funds

would not qualify as patronage dividends under Section 1388(a) of the Internal Revenue Code as

the Bylaws require:

- *FCX, Inc. v. S.C. Tax Comm'n*, 283 S.C. 142, 146 (S.C. Ct. App. 1984) (holding "[t]he legally enforceable obligation to pay patronage refunds [is] destroyed to the extent the corporation ha[s] discretion to divert net earnings to other purposes").

- *Mississippi Chem.*, 326 F.2d at 571 (holding "[i]f the board of directors of such a non-exempt cooperative has the discretion under the contract to utilize a limited portion of such margins for the payment of common stock dividends or other purpose, the amount which may be thus diverted within the fixed limits will not be excluded [from gross income], [and] the legally enforceable obligation to pay patronage refunds is destroyed to the extent that discretion to divert exists"); and

- *Farmers Co-op. Co. v. Birmingham*, 86 F. Supp. 201, 224 (N.D. Iowa 1949) (holding "[t]he courts have seemed much in accord in construing wide discretionary powers in the directors as negativing the existence of any contractual obligation on the part of the cooperative toward its patrons, and in such cases as the latter have denied exclusions even for patronage dividends actually distributed").

Accordingly, it would run afoul of Section 1388 to allow a board of directors to decide

the amount of a patronage rebate after the cooperative's members have patronized the

cooperative.  Indeed, to qualify as a patronage rebate under the Internal Revenue Code (and,

thus, to comply with CGI's Bylaws), the right of a patron to a rebate must not depend on later

action of the board of directors. *FCX*, 283 S.C. at 146 ("A convenient test of excludability was

stated to be whether the right of the patron to the refund of earnings depends upon some

corporate action taken subsequent to its receipt of the money refunded, such as action of the

corporation's officers or directors") (citations omitted); *United Cooperatives, Inc. v. Comm'r*, 4

T.C. 93, 106 (T.C. 1944) ("[T]his practice of excluding patronage dividends from gross income

has been limited to those cases in which the right of patrons to such dividends arises by reason of the corporation charter, or bylaws, or some other contract, and does not depend upon some corporate action taken subsequent to its receipt of the money later so distributed, such as the action of the corporation's officers or directors.").

29.     Because the 2016 Patronage Rebate was not voluntary, the Trustee has failed, in Counts 5 and 6, to state a plausible claim for relief under 740 ILCS 160/5(a)(2). *Cordes*, 605 F. Supp. 2d at 1021. Defendants, therefore, respectfully request the Court to dismiss Counts 5 and 6 under Rule 12(b)(6).

E.     **THE TRUSTEE CANNOT STATE A CAUSE OF ACTION UNDER COUNTS SEVEN, NINE, FOURTEEN AND SIXTEEN, BECAUSE THE DEFENDANTS WERE NOT INSIDERS OF CGI**

30.     The Trustee can only prevail on Counts 7, 9, 14, and 16 if Defendants were insiders of CGI. The Trustee does not plead sufficient facts to support the inference that Defendant corporations would be considered insiders of CGI.

### i.     The Trustee's Claims Require Insider Status

31.     The statutes on which the Trustee relies in Counts 7, 9, 14, and 16 are each dependent on Defendants having been insiders of CGI.

32.     In Counts 9 and 16, the Trustee asserts claims against Defendants under 11 U.S.C. § 544(b)(1) and 740 ILCS 160/6(b).[7]  (Dkt. 1 at ¶¶ 104-12, 157-65). Section 160/6(b) provides:

> A transfer made by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made if the transfer was made *to an insider* for an antecedent debt, the debtor was insolvent at that time, and *the insider* had reasonable cause to believe that the debtor was insolvent.

740 ILCS 160/6(b) (emphasis added).

---

[7] Again, Section 544(b)(1) merely enables a trustee to do in a bankruptcy proceeding, for the benefit of the estate, what a creditor would be able to do outside of bankruptcy under state law. *In re Kaiser*, 525 B.R. at 708.

33.    In Counts 7 and 14, the Trustee asserts preferential transfer claims against Defendants under Section 547(b) of the Bankruptcy Code.  (Dkt. 1 at ¶¶ 88-96, 141-49).  Section 547(b) requires that the subject transfer be made "(A) on or within 90 days before the date of the filing of the petition; or (B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer *was an insider*…."  11 U.S.C. § 547(b)(4) (emphasis added).

## ii.    The Trustee Has Not Sufficiently Alleged That Defendants Were Insiders

34.    The Trustee alleges, "Each Defendant is owned and operated by former CGI director James Dremonas ('Director Dremonas').  At all relevant times, Director Dremonas was an acting director of CGI.  For that reason, each Defendant is an insider of CGI and SVT."  (Dkt. 1 at ¶ 19).  The proposition that Dremonas' insider status also confers insider status on the corporations he owns is an unsupported legal conclusion.  The Court need not take this legal conclusion as true when ruling on a motion to dismiss.  *Iqbal*, 556 U.S. at 678.

35.    CGI was a corporation.  (Dkt. 1 at ¶ 5).  When a "debtor is a corporation," Section 101 of the Bankruptcy Code defines "insider" to include:

> (i) director of the debtor;
> (ii) officer of the debtor;
> (iii) person in control of the debtor;
> (iv) partnership in which the debtor is a general partner;
> (v) general partner of the debtor; or
> (vi) relative of a general partner, director, officer, or person in control of the debtor;

11 U.S.C. § 101(31)(B); *see also* 740 ILCS 160/2(g)(2) (defining "insider" almost identically as Section 101 of the Bankruptcy Code).  Here, Defendants are separate and distinct corporations. There is no question that *Defendants* – as opposed to Dremonas – were not:  (i) directors of CGI, (ii) officers of CGI, (iii) persons in control of CGI, (iv) partnerships in which CGI was a general

partner, (v) general partners of CGI, or (vi) relatives of Dremonas. (*See generally*, Dkt. 1). Defendants, therefore, do not fall within Section 101(31)(B)'s or Section 160/2(g)'s definitions of "insider."

36.      Although, "a person can be found to be an insider even if that person does not hold a position enumerated in § 101(31)(B), …. a court must determine that such a person has at least a controlling interest in the debtor or ... exercise[s] sufficient authority over the debtor so as to unqualifiably dictate corporate policy and the disposition of corporate assets." *In re Glob. Aviation Holdings Inc.*, 478 B.R. 142, 148 (Bankr. E.D.N.Y. 2012) (internal quotations and citations omitted). The Trustee does not – and, in good faith, could not – allege that *Defendants* had any controlling interest in CGI or that they exercised any authority over CGI (let alone sufficient authority to dictate corporate policy). The Trustee has therefore failed to plead sufficient facts to support the inference that Defendant corporations were insiders of CGI.

37.      Because the Trustee has not sufficiently alleged that Defendants were insiders of CGI, the Trustee has failed to state a plausible claim for relief under 740 ILCS 160/6(b).

38.      In addition, because the Trustee has not sufficiently alleged that Defendants were insiders of CGI, the Trustee could only prevail under Section 547(b)(4) if the subject transactions occurred within 90 days of the petition date. 11 U.S.C. § 547(b)(4). The Trustee attaches as an exhibit and incorporates into the Complaint a transfer schedule identifying only August and October 2016 transactions. (Dkt. 1 at ¶¶35-36; Dkt. 1-8). These August and October 2016 transactions did not occur within 90 days of the May 2, 2017 petition date. (Dkt 1. at ¶ 1). Accordingly, the Trustee has failed to state a plausible claim for relief under Section 547(b)(4).

39.      For these reasons, Defendants respectfully request the Court to dismiss Counts 7, 9, 14, and 16 under Rule 12(b)(6).

**F.     THE TRUSTEE CANNOT STATE A CAUSE OF ACTION UNDER COUNTS THREE, FIVE, TEN AND TWELVE, BECAUSE THE TRUSTEE CANNOT SEEK TO AVOID AN "OBLIGATION" WHICH HAS ALREADY BEEN PAID**

40.     In Counts 3, 5, 10 and 12, the Trustee is seeking to *presumably* avoid the $267,813.69[8] and $185,211.06 paid to the Defendants as Patronage Rebates and Vendor Rebates, respectively.  The $267,813.69 was funded by CGI pursuant to its By-Laws.

41.     Thus, in Counts 3, 5, 10, and 12 the Trustee seeks the avoidance of "fraudulent obligations" under 11 U.S.C. § 548(a)(1)(B) and 740 ILCS 160/5.  Both of these statutes relate to both *fraudulent obligations* and *fraudulent transfers*.

42.     Although the Trustee putatively seeks the avoidance of "fraudulent obligations," the Trustee does not appear to allege any obligations to avoid.  On the contrary, in Counts 3, 5, 10, and 12, the Trustee seeks to avoid *transfers*, making these counts wholly duplicative of the Counts in which the Trustee seeks to avoid the exact transfers under the very same statutes.[9]

43.     As their definitions make clear, there exists a stark difference between a "transfer" and an "obligation."  *See In re Cent. Illinois Energy Co-op.*, 521 B.R. 868, 874 (Bankr. C.D. Ill. 2014) (distinguishing between transfers and obligations: "it is not only transfers of money or property that may be avoided as fraudulent; obligations incurred by a debtor may also be avoided as fraudulent").

44.     The Illinois Uniform Fraudulent Transfer Act defines "transfer" as "every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with an asset or an interest in an asset, and includes payment of money, release, lease, and creation of a lien or other encumbrance."  740 ILCS 160/2(l).  Similarly, the Bankruptcy Code

---

[8]  According to the Trustee's Complaint, the Trustee is actually seeking to avoid the entire $44.5 million dollar patronage rebate purportedly provided to all of CGI's members in its Adversary Complaint against these Defendants.

[9]  *See,* Compare: (a) Count III with Count IV; (b) Count V with Count VI; (c) Count X with Count XI; and (d) Count XII with Count XIII.

19

defines "transfer as '(A) the creation of a lien; (B) the retention of title as a security interest; (C) the foreclosure of a debtor's equity of redemption; or (D) each mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with--(i) property; or (ii) an interest in property.'" *See, 11* U.S.C. § 101.

45.    Although 740 ILCS 160/5 does not define "obligation," the Illinois Supreme Court consistently looks to Black's Law Dictionary for the meaning of words undefined in a statute. *Shakman v. Dep't of Revenue*, 2019 IL App (1st) 182197, ¶ 32.  Black's Law Dictionary defines "obligation" as: "1.  A legal or moral duty to do or not do something....  2. A formal, binding agreement or acknowledgment of a liability to pay a certain amount or to do a certain thing for a particular person or set of persons; esp., a duty arising by contract....  *See,* duty (1); liability (1) ..." *In re Gainey Corp.*, 481 B.R. 264 (B.A.P. 6th Cir. 2012) (quoting Black's Law Dictionary (9th ed.2009)).

46.    Similarly, "[t]he term 'obligation' is not defined in §548, but the dictionary definition is a 'formal, binding agreement or acknowledgment of a liability to pay a certain amount or to do a certain thing for a particular person or set of persons, [such as] a duty arising by contract.'" *In re TOUSA, Inc*., No. 09-60589-CIV, 2011 WL 1627129, at *7 (S.D. Fla. Mar. 4, 2011) (quoting Black's Law Dictionary (9th ed.2009)).

47.    Here, as far as Defendants can tell, the Trustee seeks to avoid only *transfers* that have already occurred.  In Counts 3 and 5, the Trustee seeks the avoidance of the "2016 Patronage Dividend."  The Trustee defines this term as the "$44.5 million patronage dividend, subject to final adjustments, for the fiscal year ending July 30, 2016" that CGI's Board authorized "[o]n or about September 15, 2016."  (Dkt. 1 at ¶ 26).

48.    But the Trustee goes on to allege that "CGI ***transferred*** $267,813.69 of the 2016

Case 19-01019   Doc 32-1   Filed 02/18/20   Entered 02/18/20 16:02:30   Desc Exhibit
Ex 1   Page 26 of 29


Patronage Dividend to Defendants….." (*Id*. at ¶ 35) (emphasis added).[10] Similarly, in Counts 10 and 12, the Trustee seeks to avoid the "Allowance Dividend Transfers." The Trustee defines this term as the $185,211.06 of ***transfers*** that occurred on October 27, 2016. (Dkt. 1 at 36; Dkt. 1-8 at p. 2).

49.     Accordingly, as pleaded, Counts 3, 5, 10, and 12 concern only *transfers*. The Trustee has, thus, failed to state any claim for the avoidance of fraudulent *obligations*. The Court should, therefore, dismiss Counts 3, 5, 10, and 12 under Rule 12(b)(6).

## G.     THE TRUSTEE CANNOT STATE A CAUSE OF ACTION FOR UNJUST ENRICHMENT

50.     In Count 18, the Trustee asserts an unjust enrichment claim, alleging that Defendants "received benefits associated with the Unpaid Receivable, the Patronage Dividend Transfers, and the Allowance Dividend Transfers" but unjustly retained those benefits.[11] (Dkt. 1 at ¶¶ 170-74).

51.     "To state a claim for unjust enrichment, 'a plaintiff must allege that the defendant has unjustly retained a benefit to the plaintiff's detriment, and that defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience.'" *Gagnon v. Schickel*, 2012 IL App (1st) 120645, ¶ 25 (quoting *HPI Health Care Services, Inc. v. Mt. Vernon Hosp., Inc.*, 131 Ill. 2d 145, 160 (1989)). "This theory is inapplicable," however, "where an express contract, oral or written, governs the parties' relationship." *Id*.

52.     Here, the Trustee alleges that the "Unpaid Receivable" resulted from Defendants' breach of an express contract (the "Purchase Arrangement"). (Dkt. 1 at ¶ 33). Similarly, the

---

[10]  If the Trustee is seeking to somehow avoid *the entire* $44.5 million patronage dividend in *this* adversary case (as compared to avoiding the minute portion of the 2016 Patronage Dividend that CGI had pledged to the instant Defendants) then the Trustee would need to join as defendants the hundreds of CGI members to whom CGI pledged the 2016 Patronage Dividend.

[11]  The "Patronage Dividend Transfer" is the Trustee's term for the 2016 Patronage Rebate.

Trustee alleges that the patronage rebates were governed "by the By-laws and the Rules & Regulations," i.e., by contracts. (*Id.* at ¶ 24). Accordingly, the Trustee has not stated a plausible unjust enrichment claim with respect to the Unpaid Receivable or the patronage rebates. Defendants respectfully request the Court to dismiss, under Rule 12(b)(6), the portions of Count 18 concerning the "Unpaid Receivable" and the "Patronage Dividend Transfers."[12]

### H.    THE TRUSTEE CANNOT SUSTAIN A CAUSE OF ACTION FOR DISALLOWANCE SINCE DEFENDANTS HAVE NOT ASSERTED A PROOF OF CLAIM

53.    In Count 19, the Trustee alleges as follows:

> pursuant to 11 U.S.C. § 502(d), the Trustee hereby objects to and seeks disallowance of any claims by Defendants against the CGI Estate. Moreover, pursuant to 11 U.S.C. § 502(j), the Trustee seeks reconsideration and disallowance of any claims by Defendants against the CGI Estate to the extent that such claims have been allowed by this Court. (Dkt. 1 at ¶ 179).

54.    To succeed under Section 502(d), "the Trustee must establish two elements. These are first, that the Trustee must have successfully avoided a transfer; and second, that the transferee has not paid the amount as required…. *And of course, the defendant must have filed a proof of claim.*" *In re USA United Fleet, Inc.*, 559 B.R. 41, 63 (Bankr. E.D.N.Y. 2016) (internal citations omitted).

55.    The Trustee has not alleged (and could not allege) that Defendants have asserted any claim against the CGI Estate. Indeed, Defendants *have not filed any proof of claim.* (*See* Claims Register). The Trustee has, therefore, failed to state a plausible claim for relief under Section 502(d). Defendants respectfully request the Court to dismiss Count 19 under Rule 12(b)(6).

---

[12] This would leave Count 18 to address only the "Allowance Dividend Transfers." In the alternative, Defendants move, under Rule 12(f), to strike as impertinent any references in Count 18 to the "Unpaid Receivable" and "Patronage Dividend Transfers." FED. R. CIV. P. 12(f).

## V.   <u>CONCLUSION</u>

56.     For all the reasons explained above, Defendants respectfully request the Court,

under Federal Rule of Civil Procedure 12(b)(6), to dismiss Counts 1, 3-7, 9-10, 12, 14, 16, 18-19

for failure to state a claim on which relief can be granted.

Dated:  February 18, 2020                        Respectfully submitted,

**Pete's Fresh Market 4343 Corp., Pete's
Fresh Market Madison Corp., Pete's
Fresh Market 5724 Corp., Pete's Fresh
Market Bridgeview Corp., Pete's Fresh
Market 2526 Corp., Pete's Fresh Market
4700 Corp., West Lawn Foods, Inc.,
Pete's Fresh Market 118th Corp., Pete's
Fresh Market Sibley Corp., 3720 West
95th Street, LLC, Pete's Fresh Market
Oak Park Corp., Royale Liquors, LLC,
and GM Warehouse, Inc., Defendants**

By:   */s/ Adam B. Rome*
            One of Their Attorneys

Adam B. Rome (IL # 6278341)
Zachary P. Mulcrone (IL # 6300387)
GREIMAN, ROME & GRIESMEYER, LLC
Two North LaSalle, Suite 1601
Chicago, Illinois 60602
312-428-2750
arome@grglegal.com
zmulcrone@grglegal.com

## <u>CERTIFICATE OF SERVICE</u>

I certify that on February 18, 2020, the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to those registered to receive electronic notices via email transmission at the email addresses provided by them including:

Leo Oppenheimer, J. Benjamin King, Eric Madden, on behalf of Plaintiff Howard B. Samuels loppenheimer@rctlegal.com, bking@rctlegal.com;emadden@rctlegal.com;jharlin@rctlegal.com

Michael M. Eidelman, ESQ, Allison Hudson, & William Thorsness on behalf of Plaintiff Howard B. Samuels meidelman@vedderprice.com, ecfdocket@vedderprice.com; michael-eidelman-9405@ecf.pacerpro.com; 7610@ecf.pacerpro.com, ahudson@vedderprice.com, wthorsness@vedderprice.com,ewatt@vedderprice.com; william-thorsness-6297@ecf.pacerpro.com

I further certify that on February 18, 2020, I served the foregoing via U.S. Mail, postage prepaid, directly to those individuals listed below at the addresses listed from 2 N. LaSalle St., Chicago, Illinois before 5:00 p.m.:

| | |
|---|---|
| Kathryn M. Gleason | Ira Bodenstein |
| Ha Nguyen | Robert Fishman |
| Office of the US Trustee for Region 11 | Shaw Fishman Glantz & Towbin, LLC |
| 219 S. Dearborn St., Room 873 | 321 N. Clark St., Ste. 800 |
| Chicago, IL 60604 | Chicago, IL 60654 |
| Victor A. Des Laurier | Regina S. Kelborn |
| Diona Rogers | Victoria Guilfoyle |
| Thompson Coburn LLP | Blank Rome LLP |
| 55 E. Monroe St., 37th Floor | 1201 Market Street, Ste. 800 |
| Chicago, IL 60603 | Wilmington, DE 19801 |
| Mark V. Bossi | Mark Rabinowitz |
| Thompson Coburn LLP | Blank Rome LLP |
| One US Bank Plaza | One Logan Square 130 |
| St. Louis, MO 63101 | North 18th St. |
| | Philadelphia, PA 19109 |

  _/s/ Adam B. Rome_____
Adam B. Rome (IL # 6278341)
GREIMAN, ROME & GRIESMEYER, LLC
Two North LaSalle, Suite 1601
Chicago, Illinois  60602
Bus: (312) 428-2750Fax: (312) 332-2781
arome@grglegal.com