## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| In re: | Adv. Pro. No. 19-01019 |
| CENTRAL GROCERS, INC., *et al*., | |
| Debtor. | Case No. 17-13886 (Jointly Administered) |
| HOWARD B. SAMUELS, solely as chapter 7 trustee of the estates of CENTRAL GROCERS, INC., *et al*., | Chapter 7 |
| Plaintiff, | |
| v. | Hon. Janet S. Baer |
| PETE'S FRESH MARKET 4343 CORP., *et al*., | |
| Defendants. | |

## <u>DEFENDANTS' AMENDED REPLY IN SUPPORT OF</u>
## <u>THEIR PARTIAL MOTION TO DISMISS</u>

Defendants[1] hereby submit their Amended Reply in Support of Their Partial Motion to

Dismiss.[2]  In further support of their Amended Reply the Defendants respectfully provide as follows.

---

[1] The term "Trustee" and all other capitalized terms not defined herein are defined in the Partial Motion to Dismiss (the "Motion").  (Dkt. 33).

[2] Defendants note, for the sake of judicial efficiency, that many of the legal issues discussed in this brief – particularly those relating to patronage rebates – are the same as those that undersigned counsel is submitting concurrently in the companion D&O case.  *See Samuels v. Coari*, No. 19-1011, Dkts. 81 (Motion to Dismiss), 105 (Opposition) and #121 (Reply).

# TABLE OF CONTENTS

I. Preliminary Statement ..................................................................................................1

II. Argument.....................................................................................................................5

    A.    The Trustee Cannot State A Cause Of Action For Turnover As Alleged In Count 1...5

    B.    The Trustee Cannot State Causes Of Action As Set Forth In Counts 3-17, Since The Rebates Were Never Property Of The Estate...............................................................6

            i.    Whether The Rebates Were Property Of The Estate Are Legal Questions .................................................................................................................6

            ii.    Patronage Rebates Are Never Property Of A Cooperative ......................6

            iii.    Defendants Need Not Establish That An Express Trust Existed..............8

            iv.    The Patronage Rebate Was Not A Dividend ...........................................8

            v.    The Allowance Rebate Was Not Property Of The Estate.........................9

    C.    In Addition, The Trustee Cannot State A Cause Of Action For Counts Five And Six Since The Patronage Rebates Were Not Voluntary Payments....................................9

            i.    The By-laws Required The Board To Comply With Section 1388 Of The Internal Revenue Code ..........................................................................11

            ii.    The By-laws Did Not Allow The Board Discretion To Divert Earned Patronage Rebates To Create A Reserve .................................................13

            iii.    CGI Did Not Exercise Any Discretion Over The Amount Of The Patronage Rebate ..................................................................................15

    D.    The Trustee Cannot State A Cause Of Action Under Counts Seven, Nine, Fourteen Or Sixteen, Because The Defendants Were Not Insiders Of CGI....................................15

            i.    The Alternate Test The Trustee Proposes Does Not Apply To Debtor Corporations ..........................................................................................16

            ii.    The Trustee Does Not Satisfy The Test He Proposes............................17

    E.    The Trustee Cannot State A Cause Of Action Under Counts Three, Five, Ten, Or Twelve, Because The Trustee Does Not Allege Any Obligations To Avoid .............18

            i.    The 2016 Patronage Rebate Was Already Satisfied ..............................18

            ii.    The Allowance Payments .......................................................................19

    F.    The Trustee Cannot State A Cause Of Action For Unjust Enrichment .....................20

    G.    The Trustee Consents To The Dismissal Of Count 19 ...............................................20

    H.    The Court Should Deny Leave To Amend ................................................................21

III. Conclusion ...............................................................................................................21

CERTIFICATE OF SERVICE ........................................................................................22

# TABLE OF AUTHORITIES

**Statutes**

11 U.S.C. § 541 ..................................................................................................................2, 8

11 U.S.C. § 542 ..................................................................................................................2, 5

11 U.S.C. § 544 .........................................................................................................2, 3, 4, 16

11 U.S.C. § 547 .........................................................................................................2, 4, 9, 16

11 U.S.C. § 548 ..........................................................................................................2, 4, 9

11 U.S.C. § 550 ..................................................................................................................2

26 U.S.C. § 1388 ......................................................................................................11, 12, 13

740 ILCS 160/5 ....................................................................................................2, 3, 9, 10

740 ILCS 160/6 ......................................................................................................2, 4, 16

**Cases**

*Allied Supermarkets, Inc. v. Grocer's Dairy Co*., 45 Mich. App. 310 (Mich. Ct. App. 1973),
*aff'd* 391 Mich. 729 (Mich. 1974)...........................................................................7, 8

*Andersen Law LLC v. 3 Build Constr., LLC*, 2019 IL App (1st) 181575-U ........................10

*Apollo Real Estate Inv. Fund, IV, L.P. v. Gelber*, 403 Ill. App. 3d 179 (1st Dist. 2010) ...................10

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ...............................................................................6

*In re Canopy Fin., Inc*., 477 B.R. 696 (N.D. Ill. 2012)...............................................10, 11

*In re Cent. Illinois Energy Coop*., 526 B.R. 786 (Bankr. C.D. Ill. 2015) .....................19, 20

*Columbus Fruit & Vegetable Co-op. Ass'n, Inc. v. United States*, 7 Cl. Ct. 561 (Cl. Ct. 1985) ...........7

*Cordes & Co., LLC v. Mitchell Companies, LLC*, 605 F. Supp. 2d 1015 (N.D. Ill. 2009).................10

*In re Donlevy*, 342 B.R. 774 (Bankr. N.D. Ill. 2006)..............................................................8

*FCX, Inc. v. S.C. Tax Comm'n*, 283 S.C. 142 (S.C. Ct. App. 1984)....................................12

*Fountain City Coop. Creamery Ass'n v. Comm'r*, 9 T.C. 1077 (T.C. 1947), *aff'd*, 172 F.2d 666 (7th Cir. 1949) ...............................................................................14

*Gagnon v.Schickel*, 2012 IL App (1st) 120645...................................................................20

*Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074 (7th Cir. 1997) .................10, 21

*In re Glob. Aviation Holdings Inc*., 478 B.R. 142 (Bankr. E.D.N.Y. 2012)................................16, 17

*Grochocinski v. Schlossberg*, 402 B.R. 825 (N.D. Ill. 2009)..............................................10

*In re Hennings Feed & Crop Care, Inc.*, 365 B.R. 868 (Bankr. C.D. Ill. 2007) ................10

*Knights Franchise Sys., Inc. v. Roadway Inn-Bloomington, Inc.*, No. 02 C 857, 2002 WL 31253225 (N.D. Ill. Aug. 26, 2002)..............................................................10

*In re Knippen*, 355 B.R. 710 (Bankr. N.D. Ill. 2006), ........................................................10

*Matter of Krehl*, 86 F.3d 737 (7th Cir. 1996)..................................................................16

*Lavelle v. Dominick's Finer Foods, Inc. of Illinois*, 227 Ill. App. 3d 764 (Ill. App. Ct. 1992)...........12

*In re Longview Aluminum, L.L.C.*, 657 F.3d 507 (7th Cir. 2011)....................................16, 17

*In re Marriage of Ackerley*, 333 Ill. App. 3d 382 (Ill. App. Ct. 2002) .................................12

*In re McCoy*, 260 B.R. 863 (Bankr. N.D. Ill. 2001) ...........................................................12

*In re McHugh*, No. 02 A 00254, 2003 WL 21018601 (Bankr. N.D. Ill. May 1, 2003)......................16

*N.A.A.C.P. v. Am. Family Mut. Ins. Co.*, 978 F.2d 287 (7th Cir. 1992) .................................1

*Nelmark v. Helms*, No. 02 C 0925, 2003 WL 1089363 (N.D. Ill. Mar. 11, 2003)..............................10

*In re Pantazelos*, 543 B.R. 864, 876 (Bankr. N.D. Ill. 2016) .................................................5

*RBS Citizens v. Gammonley*, No. 12 C 8659, 2013 WL 5753783 (N.D. Ill. Oct. 23, 2013) ..............10

*In re Roti*, 271 B.R. 281 (Bankr. N.D. Ill. 2002) ...............................................................10

*In re Sardo Corp.*, No. 91 B 09826, 1996 WL 362756 (Bankr. N.D. Ill. June 11, 1996) ....................5

*In re Veluchamy*, 879 F.3d 808 (7th Cir. 2018) ...................................................................5

*U.S. v. Mississippi Chem. Co*, 326 F.2d 569 (5th Cir. 1964) ..........................................7, 12

*United Cooperatives, Inc. v. C.I.R.,* 4 T.C. 93 (T.C. 1944) ...........................................3, 14

*Zimmerman v. Paulsen*, 524 F. Supp. 2d 1077 (N.D. Ill. 2007) ...........................................10

# I. PRELIMINARY STATEMENT

All of Plaintiff's causes of action should be dismissed (except for count 2) since, *inter alia,* the Patronage Rebate and the Allowance Rebate were never property of the Estate. However, even if the Rebates were property of the Estate (which they were not) the Court should still dismiss each Count because the alleged transfer was: (i) not voluntary; (ii) not made to an insider; and (iii) not seeking to avoid a future obligation.

In this case, the Trustee seeks damages for Defendants' receipt of: (i) the 2016 Patronage Rebate[3] totaling $267,813.69; (ii) the 2016 Allowance Rebate totaling $185,211.06; and (iii) groceries totaling $1,651,991. But, with respect to the Patronage Rebate and Allowance Rebate, the Trustee seeks not only to hold the Defendant grocery stores liable for accepting money that *never belonged to the Estate*, but also to hold Defendants liable for accepting their own property which CGI was *legally obligated* to return to them. (*See* Dkt. 1-3). The Trustee has taken this position while unapologetically refusing to provide Defendants with a credit for the balance of their grocery deposit accounts against product received. As such, this Court should dismiss every count (and every claim) as set forth in the Complaint, with the exception of the breach of contract claim asserted in Count 2.[4]

Specifically, count 1 of the Trustee's Complaint must be dismissed for the following reasons:

- The Trustee cannot state a cause of action for turnover (pursuant to §542(b)) to recover the alleged unpaid account receivable ("Unpaid Receivable"). Turnover is not a method to

---

[3] The "Patronage Dividend Transfer" is the Trustee's term for the 2016 Patronage Rebate.

[4] Defendants concede that, in their Motion, they sought dismissal only of the claims set forth in Counts 1, 3-7, 9-10, 12, 14, 16, and 18-19. In opposition, the Trustee argues that this Court should deny dismissal because Counts 1-16 represent only three distinct claims and Defendants did not move to dismiss every count associated with each claim. (Dkt. 41 at ¶¶ 10-15). The Trustee is mistaken: Counts 1 through 16 represent at least twelve distinct claims. *See N.A.A.C.P. v. Am. Family Mut. Ins. Co.*, 978 F.2d 287, 292 (7th Cir. 1992) ("One set of facts producing one injury creates one claim for relief, no matter how many laws the deeds violate."). However, if the Court were to accept the Trustee's argument about the number of claims, that would result not only in the dismissal of the Counts discussed in Defendants' Motion, but also Counts 8, 11, 13, and 15. This is so because the Trustee has failed to set forth facts to sustain Counts 8, 11, 13, or 15. The Trustee's avoidance power is limited to property of the Estate, which, importantly, *never included* the Patronage Rebate or Allowance Rebate. Because the Trustee has not identified any legal theory that would support his Patronage Rebate-related claim or his Allowance Rebate-related claim, the Court must – under the Trustee's own theory – dismiss the entirety of each of those claims: Counts 3 through 17.

determine the disputed rights of parties.  Rather, it is a remedy to obtain property that is _acknowledged_ to be property of the estate.  The Unpaid Receivable has never been acknowledged as property of the estate.  On the contrary, the Trustee alleges Defendants breached the terms of their contract by refusing to pay the Debtor for the Unpaid Receivable. The Defendants contend that the Debtor failed to account for credits in their deposit accounts, and as such, do not owed the money to the Trustee.  Thus, §542(b) is not a proper cause of action.

Count 3-17 of the Trustee's Complaint must be dismissed for the following reasons:

- The Patronage Rebates and Allowance Rebates were never property of the Estate.  It is axiomatic that the reach of a trustee's avoidance powers under 11 U.S.C. §§ 548(a)(1)(B), § 544(b)(1), § 547(b), § 550 (a)(1), 740 ILCS 160/5(a)(2), 160/6(a) and 160/6(b) is limited to property belonging to the debtor.  It is also well-established that patronage rebates are never property of a cooperative.  A cooperative is merely a conduit or a trustee for patronage rebates. Money distributed as a patronage rebate is not included in the gross income of a cooperative. Thus, patronage rebates are at all times the property of the cooperative members.  This is also true with respect to the Allowance Rebates (rebates made available by vendors to store owners).  Because neither the Patronage Rebate nor the Allowance Rebate was ever property of the Estate, the Trustee cannot possibly prevail on Counts 3-17, and they must be dismissed.

- Contrary to Plaintiff's contention, Defendants did not need to establish an express trust agreement because the status of the Patronage Rebates as patronage property arises as a matter of law and not from an express trust agreement.  Section 541(d) excludes from the estate any property in which the debtor does not hold equitable title.  CGI never alleges that it held equitable title to the Patronage Rebates.  As such, the 2016 Patronage Rebate was not property of the Debtor, and therefore, the Defendants need not establish the existence of an express trust.

- The Patronage Rebate was not a dividend because the payment was not a distribution of corporate property to shareholders based on their status as shareholders.  The distribution of the Patronage Rebate was based on the amount of product each Member purchased, _e.g.,_ the amount of any given Member's Patronage Rebate was unrelated to the number of shares that Member held in CGI.  In fact, and quite to the contrary, a recipient of a Patronage Rebate did not need to own _any_ shares in CGI to receive a Patronage Rebate.  As such, as a matter of law, the Patronage Rebate was not a dividend.

Counts 5 and 6 of the Trustee's Complaint must _also_ be dismissed for the following reasons:

- The Patronage Rebates were not voluntary.  To state a cause of action under § 11 U.S.C. §544 (b)(1) or § 740 ILCS 160/5(a)(2), the Trustee must demonstrate the transfers (or obligations incurred) were voluntary.  CGI's Bylaws required CGI to remit Patronage Rebates in accordance with the Internal Revenue Code, which required CGI to become legally obligated to pay the rebate _before_ conducting business with any members or patronages.  The By-laws, which control over inconsistent allegations in the Complaint establish that CGI was required to pay the 2016 Patronage Rebate.  As such, the Trustee cannot state a claim under §544 or 160/5(a)(2).

- CGI was legally obligated to satisfy the 2016 Patronage Rebate.  Contrary to the Trustee's response, the By-laws did not provide the Directors with discretion to ignore the 2016

Patronage Rebate. If this were in fact true, such discretion would have created $44.5 of taxable income. To support his argument, the Trustee cites to discretionary langue contained in the By-laws, but as more fully discussed below, the Trustee has misconstrued these provisions. CGI had no discretion to create a reserve out of earned patronage rebates (*i.e.,* revenue CGI received but has not yet distributed as patronage rebates). According to the By-laws, CGI had discretion to set reserves only for the following fiscal year, such that patrons would know before purchasing from CGI that a portion of their rebates would be used to fund a reserve account. Thus, according to CGI's Bylaws, if CGI wanted to reduce the 2016 Patronage Rebate to build reserves, to invest in its business, or to pay debts, CGI would have had to make that decision during Fiscal Year 2015, *e.g.,* prior to the 2016 Patronage Rebate being collected from the Patronages in the first place.

- Contrary to the Trustee's allegations, CGI did not agree to reduce the amount of the patronage rebate by 30%. To the contrary, according to CGI's own Complaint, CGI agreed to a 30% "holdback" of member rebates. (Dkt. 1 at ¶ 40) (emphasis added).[5] The By-laws allowed CGI the discretion to pay the patronage rebate anytime within "eight and a half (8 ½) months following the end of the fiscal year." (Dkt. 1-3 at 30). In other words, CGI had discretion to pay the 2016 Patronage Rebate (for the fiscal year ending July 31, 2016) any time before April 15, 2017. (*Id.*). Having discretion under the By-laws to withhold payment until a later date is not, by any stretch, the equivalent of possessing discretion to alter the amount of the rebate after the funds were collected.

- The Directors did comply with CGI's By-laws by crediting each of its store members its 30% patronage rebate as a credit against future purchases and reflected each transaction as a credit in each store's deposit accounts. (Dkt. 1 at ¶ 28). (*See also* letters dated October 19, 2016 and October 28, 2016 attached hereto and incorporated herein as **Exhibits A and B**.)

- Finally, *United Cooperatives, Inc. v. C.I.R.,* 4 T.C. 93 (T.C. 1944), does not stand for the proposition that a cooperative can create reserves without destroying the tax benefits associated with a patronage rebate. *United Cooperative* involved a depreciation reserve. The *United Cooperative* court held that a depreciation reserve was a "proper operational expense" that would have been subtracted from the entity's gross income. Thus, the creation of a depreciation reserve (which is not a taxable event) was an expense of the company, which could be excluded from a patronage rebate just as other expenses. In this case, by contrast, the Trustee does not allege that the Directors should have set up a depreciation reserve or any other type of reserve that could possibly be considered an operational expense. On the contrary, the Trustee suggests that the Directors should have retained a portion of the rebate payments to improve CGI's and/or SVT's financial net worth. This decision would have created income to CGI, as opposed to business expenses as the *United Cooperative* court held.

In addition, counts 7, 9, 14 and 16 of the Trustee's Complaint must likewise be dismissed:

- The Trustee cannot state a cause of action under § 740 ILCS 160/6(b) or § 547(b) because the Trustee has not sufficiently pled an insider relationship. Each Defendant is an LLC owned by James Dremonas, who was once a director of CGI. The proposition that James Dremonas'

---

[5] Citations to the docket refer to the ECF pagination.

insider status also confers insider status on the Defendants corporations he owns is an unsupported legal conclusion.

- As the Trustee concedes, a separate business controlled by a corporation's director does not fit within the statutory definition of "insider." (Dkt. 41 at ¶ 41). Although, "a person can be found to be an insider even if that person does not hold a position enumerated in § 101(31)(B), … a court must determine that such a person has at least a *controlling interest* in the debtor or ... exercised *sufficient authority* over the debtor so as to unqualifiably dictate corporate policy and the disposition of corporate assets. The Trustee does not submit that Defendants would meet this standard.

- The Trustee pled that Defendants are grocery stores that purchased goods from CGI, and that their owner, James Dremonas, was a director of CGI. There are no allegations that Defendants transactions with CGI were not conducted at arm's length. The Complaint is devoid of any allegations that James Dremonas personally pushed for CGI to enter into transactions with Defendants, and includes no allegations that Defendants obtained a benefit on different terms than any other CGI member. In fact, the mere fact that CGI issued $44.5 million dollars of Patronage Rebates in 2016, yet, the Trustee accuses Dremonas of diverting only $450,000 – merely 1% of the total – to his stores demonstrates the absurdity of this allegation.

Counts 3, 5, 10, and 12 of the Trustee's Complaint must be dismissed for the following reasons:

- The Trustee cannot state a cause of action under § 548(a)(1)(B), §544 (b)(1) or § 740 ILCS 160/5 since the Trustee seeks to avoid transfers, not obligations, making these counts wholly duplicative of the Counts in which the Trustee seeks to avoid the exact transfers under the very same statutes.

- Moreover, the trustee is improperly seeking to avoid the entire $44.5 million dollar obligation CGI incurred to pay the 2016 Patronage Rebate. In other words, the Trustee is seeking *in this case* to somehow avoid CGI's obligation, to all of its hundreds of patrons, to pay the $44.5 million dollars' worth of 2016 Patronage Rebate. As Defendants explained in their Motion, to do this, the Trustee would need to join as defendants the hundreds of CGI members to whom CGI pledged the 2016 Patronage Rebate. The Trustee does not address that argument in his Opposition and therefore, this Court should dismiss Counts 3, 5, 10 and 12.

Counts 18 of the Trustee's Complaint must be dismissed for the following reasons:

- Unjust enrichment cannot be used as a theory of recovery where an express contract, oral or written, governs the parties' relationship. The Trustee alleges that the patronage rebates were governed "by the By-laws and the Rules & Regulations," *e.g.,* express contracts. (Dkt. 1 at ¶ 24). The Trustee has included the allegations of express contract in the count for unjust enrichment. Alternative pleading is only permitted if the movant believes that the underlying contract may be defected. However, a plaintiff cannot allege a breach of contract (and with no good faith belief that the contract(s) is invalid) also allege an unjust enrichment claim in the alternative. Such duplicative pleadings are not proper.

As such, for the reasons stated previously, and as set forth in more detail below, this Court should

dismiss the Trustee's claims with respect to Count 1 and Counts 3 through 19.

## II. ARGUMENT

### A.   THE TRUSTEE CANNOT STATE A CAUSE OF ACTION FOR TURNOVER AS ALLEGED IN COUNT 1

Turnover cannot be used as a method to recover disputed claims like the Unpaid Receivable. (Dkt. 1 at ¶ 49). Turnover, "is not a method to determine the disputed rights of parties"; rather, it is a remedy to obtain property that is *acknowledged* to be property of the estate. *In re Pantazelos*, 543 B.R. 864, 876 (Bankr. N.D. Ill. 2016). The Unpaid Receivable is not acknowledged to be property of the Estate. On the contrary, the Unpaid Receivable is property of the Defendants, which the Trustee alleges Defendants owe to CGI in exchange for groceries. (Dkt. 1 at ¶ 42). Thus, §542(b) is not a proper cause of action.

Specifically, paragraph 33 of the Complaint alleges that, "Defendants' failure to remit payment for the Unpaid Receivable … constituted [a] material breach[] of the Purchasing Arrangement, the Membership Agreement, the By-Laws, and the Rules & Regulations." (*Id*. at ¶ 33). As such, the Unpaid Receivable is a disputed account receivable, which will only become payable if and when the Trustee succeeds on his breach of contract claim under Count 2. This is precisely the type of disputed contract right that is disallowed under Section 542. *See, e.g., In re Sardo Corp*., No. 91 B 09826, 1996 WL 362756, at *14–15 (Bankr. N.D. Ill. June 11, 1996) ("[T]he Trustee cannot transform a breach of contract action into a turnover proceeding…. '[t]urnover, 11 U.S.C. § 542, is not the provision of the Code to determine the rights of the parties in legitimate contract disputes.'").

The Trustee relies solely on *In re Veluchamy*, 879 F.3d 808 (7th Cir. 2018) in opposition to Defendants' motion. However, *In re Veluchamy* is completely distinguishable from the facts of this case. In *Veluchamy* the debtors transferred their money to an overseas account that they controlled, and the trustee sought a turnover of those funds. *Veluchamy* has nothing to do with: (i) disputed accounts receivable; (ii) a third-party breach of contract; or (iii) non-debtor funds of any kind. The

fact that the Trustee instructs this Court to rely on *Veluchamy* is quite telling and demonstrates the overreaching breadth of his Complaint.  As such, this Court should dismiss Count 1 with prejudice.

### B.    THE TRUSTEE CANNOT STATE CAUSES OF ACTION AS SET FORTH IN COUNTS 3-17, SINCE THE REBATES WERE NEVER PROPERTY OF THE ESTATE

As Defendants explain in the Motion, it is axiomatic that the reach of a trustee's avoidance power is limited to property belonging to the debtor.  The Trustee does not contest this fact.  (*See* Dkt 33 at 14; Dkt. 41 at 11).  Because the Patronage Rebate and Allowance Rebate were never property of the Estate, the Trustee cannot possibly prevail under Counts 3 through 17.

### i.    WHETHER THE REBATES WERE PROPERTY OF THE ESTATE ARE LEGAL QUESTIONS

The Trustee first argues that, because he alleged that the 2016 Patronage Rebate constituted a transfer of CGI's property that the Court must take that allegation as true for purposes of a motion to dismiss.  (Dkt. 41 at ¶ 19).  Not so.  Although a court must accept as true all well-pleaded allegations in a complaint, it need not accept legal conclusions as true.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Whether the 2016 Patronage Rebate constituted a transfer of CGI's property is a question resolved by applying the law governing patronage rebates to the provisions of CGI's By-laws; in other words, it is a legal question.[6]  The Court need not take the Trustee's allegations as true.

### ii.    PATRONAGE REBATES ARE NEVER PROPERTY OF A COOPERATIVE

The money returned to a patron as a patronage rebate is never property of the cooperative, and at all times is property of the patronage.  It is well established law that patronage rebates are never property of a cooperative.  (*See* Dkt. 33 at 16-18).  A cooperative is merely a conduit or a trustee for patronage rebates.  Money distributed as a patronage rebate is not included in the gross income of a cooperative; thus, patronage rebates "are at all times the property of the member stockholders."

---

[6] Defendants base their argument on the By-laws, which the Trustee incorporated into, and attached to, the Complaint.  (Dkt. 1-3).  Accordingly, there is no valid basis for the Trustee to assert that Defendants "argue that the Court should consider information outside the Complaint."  (Dkt. 41 at ¶ 20).

*Columbus Fruit & Vegetable Co-op. Ass'n, Inc. v. United States*, 7 Cl. Ct. 561, 564 (Cl. Ct. 1985)

(quotations omitted). "The money *involved never belongs to the cooperative*." *Id.* (emphasis added).

The Trustee argues that Defendants cannot establish as a matter of law that CGI's patronage

rebates constituted property of CGI's members.[7] (Dkt. 41 at 12). In their Motion, Defendants cite six

decisions that stand for this proposition. The Trustee cites to no decisions contesting this principle.

Instead, the Trustee argues that the decisions on which Defendants rely are inapposite by virtue of the

fact that they are largely income tax-related.[8] But the Trustee does not provide any explanation for

why the reasoning of the decisions would not apply here, nor could he. The decisions Defendants cite

analyze the *characteristics* of patronage rebates generally.

The plaintiff in a Michigan cooperative case (one which was *not* tax-related) tried to make the

same argument as the Trustee – *i.e.*, that patronage rebate decisions are not applicable outside of the

tax context. *Allied Supermarkets, Inc. v. Grocer's Dairy Co*., 45 Mich. App. 310 (Mich. Ct. App.

1973), *aff'd* 391 Mich. 729 (Mich. 1974). The Michigan Court of Appeals rejected that argument and

noted that patronage rebate decisions (including *U.S. v. Mississippi Chem. Co*. – a decision on which

Defendants rely) typically do not rely upon the internal revenue code, but "upon sound principles of

general commercial law." *Id.* The court went on to hold:

> If a corporation which sells merchandise is contractually obligated to return to certain
> purchasers a portion of the purchase price, that portion of the purchase price subject to
> refund **never** becomes the property of the corporation and cannot be considered gain
> or income. Until refunded, the corporation merely holds the money as agent or trustee
> for the purchaser.

*Id.* In other words, this non-tax case supports the proposition that the 2016 Patronage Rebate was

---

[7] The Trustee cites several decisions related to *stock dividends*. (Dkt. 41 at 12 n.28). Stock dividends, which are paid to stockholders on the basis of stock ownership, are wholly divorced from patronage rebates, which are paid to a cooperative's customers as a refund in proportion to the customer's purchases. Accordingly, the stock dividend cases on which the Trustee relies are inapplicable here.

[8] The Trustee also argues that the Articles of Incorporation use the word "owner" with respect to CGI's purpose. (Dkt. 41 at ¶ 25). But this plainly refers to CGI's ownership of groceries before selling them to its patrons.

never property of CGI.

The Trustee also argues that Defendants "cannot establish at the motion to dismiss stage that the Patronage Dividend Transfers was a proper patronage dividend under federal tax law" because the funds may have been distributed "improper[ly]." (Dkt. 41 at ¶ 27). The Trustee has it backwards. The fact that patronage rebates are always property of the patron is a characteristic of *patronage rebates generally*, not merely in the context of qualifying for preferential tax treatment under the tax code. *Allied Supermarkets*, 45 Mich. App. at 314. As such, as a matter of law, the money received by the Defendants as Patronage Rebates were never property of the Estate.

### iii. DEFENDANTS NEED NOT ESTABLISH THAT AN EXPRESS TRUST EXISTED

Defendants do not need to establish an express trust agreement because the status of the patronage rebates as patronage property arises as a matter of law and not from any express trust agreement. Section 541(d) excludes from the estate any property in which the debtor does not hold equitable title. 11 U.S.C. § 541(d). The Trustee argues that because Defendants have not established that an express trust existed between CGI and Defendants, the 2016 Patronage Rebate must have constituted property of the estate under Section 541.[9] (Dkt. 41 at 13). Because CGI never held equitable title[10] to any patronage rebates, the 2016 Patronage Rebate was not property of the estate.[11]

### iv. THE PATRONAGE REBATE WAS NOT A DIVIDEND

The patronage rebates were not improper dividends. The Patronage Rebate was not a dividend

---

[9] It is unclear why the Trustee focuses on express trusts when (i) other types of trusts exist (constructive trusts, resulting trusts, etc.) and (ii) there is no requirement that property be held in a trust to fall under the auspices of Section 541(d).

[10] In any event, all of the elements of an express trust are present here: (1) the By-laws show that Defendants and CGI intended to create a trust; (2) a definite subject matter of trust property exists: the patronage rebate; (3) there are ascertainable beneficiaries: Defendants; (4) there is a trustee: CGI; (5) there are specifications of purpose and performance contained in the By-laws; and (6) there was a delivery of trust property to the Trustee: Defendants' purchases from CGI. *In re Donlevy*, 342 B.R. 774, 781 (Bankr. N.D. Ill. 2006).

[11] The Trustee does not allege that CGI held equitable title. And, even if he had, the By-laws and patronage rebate case law indicate that equitable title to patronage rebates vests in the patrons, and never in the cooperative.

at all because the payment was not a distribution of corporate property to shareholders based on their status as shareholders. Because the 2016 Patronage Rebate was never property of CGI, Defendants cannot be found liable under 11 U.S.C. § 548(a)(1)(B), 740 ILCS 160/5(a)(2), or 11 U.S.C. § 547(b). The Trustee argues that Defendants' "property" arguments do not apply to Counts 3 or 5 because, in those Counts, the Trustee seeks to avoid obligations, not transfers. (Dkt. 41 at ¶ 28). Any alleged obligation at issue in Counts 3 and 5 would necessarily concern the 2016 Patronage Rebate and would, thus, concern Defendants' property, not CGI's.

The Trustee has, therefore, failed to state a claim in Counts 3 through 9. (Again, although Defendants did not focus on Count 8 in their Motion, the Trustee opened the door to dismissal of Count 8 by arguing that it is the same claim as the other Patronage Rebate counts Defendants moved to dismiss.)

### v. THE ALLOWANCE REBATE WAS NOT PROPERTY OF THE ESTATE

The Trustee asserts claims concerning the Allowance Rebate in Counts 10 through 16. Defendants moved to dismiss Counts 10, 12, 14, and 16. The Trustee argues that dismissal of these Counts is not warranted because (i) Counts 10 through 16 represent a single claim, and (ii) the Trustee could potentially prevail under the legal theories described in Counts 11, 13, and 15. However, all of the Allowance Rebate counts sound in avoidance, which, again, is limited to property of the debtor. Because the Allowance Rebates (*i.e.*, purchase price reductions) were never property of CGI and at all times property of Defendants, the Trustee could not possibly prevail on his avoidance claim(s). Therefore, since the Trustee argued that Counts 10 through 16 rise or fall together as a single claim, the Court must dismiss Counts 10 through 16.

### C. IN ADDITION, THE TRUSTEE CANNOT STATE A CAUSE OF ACTION FOR COUNTS FIVE AND SIX SINCE THE PATRONAGE REBATES WERE NOT VOLUNTARY PAYMENTS

To prevail under Counts 5 and 6 under § 544 (b)(1) or § 740 ILCS 160/5(a)(2), the Trustee

must demonstrate the subject transfers (or obligations incurred) were voluntary. To state a claim under Section 160/5(a)(2), the plaintiff must allege that the debtor made a **_voluntary_** transfer. *See, e.g., Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1079 (7th Cir. 1997); *Andersen Law LLC v. 3 Build Constr., LLC*, 2019 IL App (1st) 181575-U, ¶ 74; *RBS Citizens v. Gammonley*, No. 12 C 8659, 2013 WL 5753783, at \*5 (N.D. Ill. Oct. 23, 2013); *Apollo Real Estate Inv. Fund, IV, L.P. v. Gelber*, 403 Ill. App. 3d 179, 193 (1st Dist. 2010); *Cordes & Co., LLC v. Mitchell Companies, LLC*, 605 F. Supp. 2d 1015, 1021 (N.D. Ill. 2009); *Grochocinski v. Schlossberg*, 402 B.R. 825, 838 (N.D. Ill. 2009); *Zimmerman v. Paulsen*, 524 F. Supp. 2d 1077, 1080 (N.D. Ill. 2007); *In re Hennings Feed & Crop Care, Inc.*, 365 B.R. 868, 874 (Bankr. C.D. Ill. 2007); *In re Knippen*, 355 B.R. 710, 733 (Bankr. N.D. Ill. 2006), *aff'd sub nom. Knippen v. Grochocinski*, No. 07 C 1697, 2007 WL 1498906 (N.D. Ill. May 18, 2007); *Knights Franchise Sys., Inc. v. Roadway Inn-Bloomington, Inc.*, No. 02 C 857, 2002 WL 31253225, at \*1 (N.D. Ill. Aug. 26, 2002); *In re Roti*, 271 B.R. 281, 302 (Bankr. N.D. Ill. 2002), *aff'd sub nom. Nelmark v. Helms*, No. 02 C 0925, 2003 WL 1089363 (N.D. Ill. Mar. 11, 2003).

Faced with the plethora of cases cited by the Defendants, in responding to the Defendants motion, the Trustee's relies on one decision – *In re Canopy Fin., Inc*., 477 B.R. 696, 707 (N.D. Ill. 2012) for the proposition that involuntary payments can be subject to Section 160/5(a)(2). *Canopy* is a non-binding outlier. The Defendants have not identified any other decision before or after *Canopy* holding that Section 160/5(a)(2) applies to involuntary payments. Moreover, the crux of *Canopy*'s holding is that several prior decisions did not mean "voluntary" when they used the term "voluntary." 477 B.R. 696. This reasoning is not persuasive to contradict the numerous other cases that hold the opposite both before and after *Canopy* was decided.

In this case, the Patronage Rebate transfers were compulsory as opposed to voluntary. CGI's Bylaws required CGI to remit Patronage Rebates in accordance with the Internal Revenue Code, which required CGI to become legally obligated to pay the rebate _before_ conducting business with any members or patronages. The By-laws, which control over inconsistent allegations in the Complaint,

establish that CGI was required to pay the 2016 Patronage Rebate. (*See* Dkt. 33 at 20). Specially, the By-laws provide as follows:

> The Corporation **shall distribute** to qualifying Members and Patrons as Patronage Rebates all of the Corporation's Rebateable Net Income in excess of such reserves, payment of debts, capital improvements or additions, and working capital requirements as the Board of Directors may from time to time determine. Such distributions **shall be made** in a manner based on Members' and Patrons' purchases from the Corporation's departments, in accordance with the provisions governing Patronage Rebates in the Rules and Regulations. For purposes of determining a Member's purchases from the Corporation's departments, all purchases by Persons in the same Related Group as the Member shall be aggregated. Distribution of Patronage Rebates from Rebateable Net Income of any fiscal year shall occur no later than eight and a half (8 ½) months following the end of the fiscal year. **It is intended** that Patronage Rebates qualify as "patronage dividends" within the meaning of Section 1388(a) of the Internal Revenue Code of 1986, as amended.

(Dkt. 1-3 at 30) (emphasis added). There is no question that CGI was required to distribute patronage rebates annually. There is also no question that those patronage rebates had to qualify under Section 1388 of the Internal Revenue Code, 26 U.S.C. § 1388 (which is important because if a company has discretion to modify the amount of patronage rebates distributed to patrons after the patrons earn those rebates, then the rebates do not qualify under Section 1388). In response, the Trustee argues that the rebate payments were voluntary because (i) CGI's By-laws did not require the patronage rebate to qualify for preferential tax treatment under Section 1388 of the Internal Revenue Code, and (ii) the By-laws allowed the Board to divert patronage rebates for company reserves. (Dkt. 41 at ¶¶ 31-39). The Trustee is wrong on both points.

### i. THE BY-LAWS REQUIRED THE BOARD TO COMPLY WITH SECTION 1388 OF THE INTERNAL REVENUE CODE

The By-laws provide: "[i]t is intended that Patronage Rebates qualify as 'patronage dividends' within the meaning of Section 1388(a) of the Internal Revenue Code of 1986, as amended." (Dkt. 1-3 at 30). In the Opposition, the Trustee latches onto the word "intended" and attempts to argue, counterintuitively, that the word "intended" establishes that CGI *did* have discretion to create a reserve with already-earned patronage rebate funds. (Dkt. 41 at ¶ 32). In focusing on the word "intended,"

the Trustee ignores that the By-laws state that CGI **shall distribute** patronage rebates.[12]  (Dkt. 1-3

at 30) (emphasis added).  Lack of board discretion is a feature of patronage rebates generally, not just

patronage rebates in the context of qualifying under Section 1388.  More specifically, cooperatives

must become legally obligated to pay a patronage rebate _before_ patrons transact business with the

cooperative, otherwise the payment is not considered a patronage rebate.  *See, e.g., United States v.*

*Mississippi Chem. Co.*, 326 F.2d 569, 571 (5th Cir. 1964); *see also* Dkt. 33 at 20-21 (collecting cases).

Because a cooperative must be under a pre-existing obligation to pay a patronage rebate at the time a

patron purchases through the cooperative, a cooperative lacks any discretion to divert patronage rebate

funds for other purposes.  *See, e.g., FCX, Inc. v. S.C. Tax Comm'n*, 283 S.C. 142, 146 (S.C. Ct. App.

1984); *see also* Dkt. 33 at 21-22 (collecting cases).

Furthermore, it is a fundamental tenet of contract interpretation that contracts are interpreted

to further the parties' intent.  *Lavelle v. Dominick's Finer Foods, Inc. of Illinois*, 227 Ill. App. 3d 764,

767 (Ill. App. Ct. 1992) ("It is the duty of the court to interpret a contract in accordance with the

intention of the parties.").  Indeed, "[t]he primary objective is to give effect to the parties' intentions

as determined by the language of the agreement."  *In re McCoy*, 260 B.R. 863, 868 (Bankr. N.D. Ill.

2001) (emphasis added).  Here, the By-laws explicitly address the intent:  to distribute patronage

rebates that "qualify as 'patronage dividends' within the meaning of Section 1388(a)."  (Dkt. 1-3 at

30).

A patronage rebate does not qualify under Section 1388 if there is discretion to divert it for

other uses.[13]  Because the patronage rebates were intended to qualify under Section 1388, it was

---

[12] "'Shall' connotes a mandatory obligation."  *In re Marriage of Ackerley*, 333 Ill. App. 3d 382, 398 (Ill. App. Ct. 2002).

[13] To qualify for preferential treatment under Section 1388(a) of the Internal Revenue Code, a cooperative must become legally obligated to pay a patronage rebate *before* patrons transact business with the cooperative.  26 U.S.C. § 1388(a)(2) (providing that a cooperative must make payments to patrons "under an obligation of such organization to pay such amount, which obligation existed before the organization received the amount so paid").

intended CGI would lack any discretion regarding the amount of the patronage rebates. In other words,

the 2016 Patronage Rebate was not voluntary.

### ii.  THE BY-LAWS DID NOT ALLOW THE BOARD DISCRETION TO DIVERT EARNED PATRONAGE REBATES TO CREATE A RESERVE

The Trustee also argues that paying the patronage rebates was voluntary because CGI had

discretion to use the patronage rebates to fund corporate reserves. (Dkt. 41 at ¶ 33). The Trustee is

mistaken: While the Board was able to create reserves and make capital improvements, it was only

able to do so out of future revenue – *not* from earned but unpaid patronage rebates. In the Opposition,

the Trustee cites the following provisions of the By-laws to argue that CGI had discretion over the

amount of the patronage rebate by simply changing the amount of reserves: "The Corporation shall

distribute to qualifying Members and Patrons as Patronage Rebates all of the Corporation's Rebateable

Net Income in excess of such reserves, payment of debts, capital improvements or additions, and

working capital requirements as the Board of Directors may from time to time determine."[14]  (Dkt. 41

at ¶ 33). The Trustee, however, misunderstands (or misconstrues) the By-laws.


CGI could not create a reserve out of earned patronage rebates (*i.e.*, revenue CGI had received

but had not yet distributed as patronage rebates). The ability to create such a reserve would have meant

the Board had complete discretion to reduce the amount of the patronage rebate after the patronage had

already occurred. But such discretion would run afoul of the By-laws and the tax code. For the Bylaws

to be internally consistent, the Board could set reserves only for the *following* fiscal year, such that

patrons would know *before* purchasing from CGI that the patronage rebates for their purchases would

be reduced by the amount of the declared reserve. In other words, if CGI wanted to reduce the 2016

---

[14] The By-laws also provide, "The Board of Directors may set aside reasonable reserves from time to time by resolution as it deems appropriate to provide for any contingencies or expected losses of the Corporation and as it otherwise deems to be in the best interests of the Corporation." (Dkt. 1-3 at 30).

Patronage Rebate to build reserves, to invest in the business, or to pay debts, CGI would have had to make that decision during Fiscal Year 2015.

Instead of engaging with the Directors' argument, the Trustee cites *United Cooperatives*, 4 T.C. 93, for the proposition that a cooperative can create reserves without destroying the tax benefits associated with a patronage rebate.  (Dkt. 41 at ¶¶ 37-39).  Importantly, in that case, a *depreciation reserve* was at issue.  The court noted that a depreciation reserve is a "***proper operational expense***" that would have been subtracted from gross income (and, thus, would not have been taxed) even if the by-laws had not specifically provided for it.  4 T.C. at 108 (emphasis added).  Here, by contrast, the Trustee does not allege that the Directors should have set up a depreciation reserve (or any other type of reserve) that could possibly be considered an operational expense.  On the contrary, the Trustee suggests that the Directors should have retained a portion of the rebate payments to improve CGI's or SVT's condition or retained the money against future contingencies.  This is improper.

In *Fountain City Coop. Creamery Ass'n v. Comm'r*, 9 T.C. 1077 (T.C. 1947), *aff'd*, 172 F.2d 666 (7th Cir. 1949), a Wisconsin cooperative created a contingency reserve to protect against future loss.  In that case, the directors were even authorized to order the company to pay subsequent patronage rebates out of the reserve, provided that the funds in the reserve were not needed for other corporate expenses.  The Tax Court noted, "[i]t is difficult to see much if any distinction between this reserve and the general funds of the [cooperative]." *Id*. at 1080.  Because the amount paid out to patrons was wholly discretionary, the Tax Court held that the cooperative could not exclude that income from its gross revenue.  In other words, the Tax Court held that the money did not constitute a patronage rebate. The Seventh Circuit, affirming the Tax Court's decision, held that the amounts the cooperative had discretion to reserve "never belonged to the patrons," and, thus, were not excludable from the cooperative's gross income. *Fountain City Co-op. Creamery Ass'n v. Comm'r,* 172 F.2d 666, 668 (7th Cir. 1949).  Applying that logic here, if the Board had discretion to divert all of CGI's past revenue to a reserve, then CGI's revenue would never have qualified as a patronage rebate, in direct contravention

of the By-laws (not to mention the entire purpose of the cooperative), resulting in massive tax exposure to GCI for 2016 and prior years. The only consistent way to read the By-laws is that CGI lacked discretion to divert earned patronage rebates to a reserve.

### iii. CGI Did Not Exercise Any Discretion Over The Amount Of The Patronage Rebate

The Trustee asserts that CGI "*did* exercise discretion over the rebate," by "vot[ing] to withhold 30% of the 2016 Rebate to satisfy CGI's lenders." (Dkt. 41 at ¶ 34). The Trustee then argues that this constitutes "evidence" that the CGI possessed discretion over the amount of the patronage rebate.[15] (*Id*.) But, contrary to the Trustee's insinuation, CGI did not agree to reduce the amount of the patronage rebate by 30%. On the contrary, according to the Trustee's own Complaint, CGI agreed to "defer" 30% of the cash rebate payments until a later date. (Dkt. 1 at ¶¶ 27-28). The By-laws allowed CGI the discretion to pay the patronage rebate anytime within "eight and a half (8 ½) months following the end of the fiscal year." (Dkt. 1-3 at 30). In other words, CGI had discretion to pay the 2016 Patronage Rebate (for the fiscal year ending July 31, 2016) any time before April 15, 2017. (Dkt. 1 at ¶ 41). Having discretion under the By-laws to withhold payment until a later date is not, by any stretch, the equivalent of possessing discretion to change the total amount of the rebate.

### D. The Trustee Cannot State A Cause Of Action Under Counts Seven, Nine, Fourteen Or Sixteen, Because The Defendants Were Not Insiders Of CGI

In Counts 7, 9, 14, and 16, the Trustee asserts claims under § 11 U.S.C 547(b), §544 (b)(1) and 740 ILCS 160/6(b). These claims each fail because the Trustee has not sufficiently pled an insider relationship on the part of Defendants. Each Defendant is an LLC owned by Dremonas, who was once

---

[15] The Trustee also argues that having voted on the patronage rebate at all is evidence that the CGI Board possessed discretion. (Dkt. 41 at ¶ 34). Ignoring the fact that boards regularly vote to formally recognize financials, the Board here did not even vote to establish the precise amount of rebate, but rather left the amount "subject to final adjustments" by to the company's auditors. (Dkt. 1 at ¶ 26). Moreover, holding a vote allowed the Board to exercise discretion over the distribution(s) and timing of the patronage rebates. In September 2016, the Board declared that the patronage rebate (per CGI's longstanding practice) would be distributed before the annual shareholder meeting. The Board, instead, could have voted to make multiple distributions, or a single distribution with different timing. (*See* By-laws).

a director of CGI.  As the Trustee concedes, a separate business controlled by a corporation's director does not fit within the statutory definition of "insider."  (Dkt. 41 at ¶ 41).  Although, "a person can be found to be an insider even if that person does not hold a position enumerated in § 101(31)(B), …. a court must determine that such a person has at least a controlling interest in the debtor or ... exercise[s] sufficient authority over the debtor so as to unqualifiably dictate corporate policy and the disposition of corporate assets."  *In re Glob. Aviation Holdings Inc*., 478 B.R. 142, 148 (Bankr. E.D.N.Y. 2012) (internal citations omitted).  The Trustee does not submit that Defendants would meet this standard.

###### i.   THE ALTERNATE TEST THE TRUSTEE PROPOSES DOES NOT APPLY TO DEBTOR CORPORATIONS

Instead, the Trustee argues that the test Defendants cite is not the test the Seventh Circuit uses. According to the Trustee, to properly plead an insider relationship, a plaintiff must allege that "(1) the defendant's relationship to the debtor is beyond a mere creditor-debtor relationship, and (2) that the transaction was not conducted at arm's length."  (Dkt. 41 at ¶ 41).  But for this proposition, the Trustee cites *In re Longview Aluminum, L.L.C*., 657 F.3d 507, 510 (7th Cir. 2011); *Matter of Krehl*, 86 F.3d 737, 741 (7th Cir. 1996); and *In re McHugh*, No. 02 A 00254, 2003 WL 21018601, at *10 (Bankr. N.D. Ill. May 1, 2003).[16]  *Longview* involved a debtor LLC, *Krehl* involved a debtor individual, and *McHugh* involved a debtor individual.  None involved a debtor corporation.

Different types of debtors have different categories of people or entities that can exert improper influence over them.  Section 101(31) recognizes this reality and sets forth different "insider" tests for each different category of debtor.  That a particular test has been applied to a debtor individual or debtor LLC does not mean the test has any application to a debtor corporation.  Indeed, the the Seventh Circuit recognized the stark differences between different types of debtor entities in *Longview*: "because an LLC manager's powers can be specified by an LLC agreement, an LLC manager's

---

[16] The Trustee cites two other decisions, both from outside the Seventh Circuit, but never explains what test those decisions used to reach their conclusions.  (*See* Dkt. 41 at ¶¶ 43-44).

authority can be vastly different from that of a director of a corporation…."  657 F.3d at 510.  Because none of the Seventh Circuit decisions the Trustee cites involved a debtor corporation, the test the Trustee proposes is inapplicable here.

Even though the *Global Aviation* test Defendants cite originates outside of the Seventh Circuit, the Court should apply it here.  Unlike the Seventh Circuit cases the Trustee cites, *Global Aviation* actually involves a debtor corporation.  Moreover, *Global Aviation* reflects a reasonable view regarding the circumstances in which another entity might have enough influence over a corporation to cause it to make preferential transfers:  when there is "sufficient authority over the debtor so as to unqualifiably dictate corporate policy and the disposition of corporate assets."  478 B.R. at 148.

### ii. THE TRUSTEE DOES NOT SATISFY THE TEST HE PROPOSES

Even if the Court were to apply the test the Trustee proposes, the Trustee has not satisfied that test.  The first prong of the test that the Trustee proposes is that "(1) the defendant's relationship to the debtor is beyond a mere creditor-debtor relationship."  (Dkt. 41 at ¶ 41).  The Trustee pled that Defendants are grocery stores that purchased goods from CGI, and that their owner, Dremonas, was a director of CGI.  But the mere fact that Dremonas was a director of CGI does not change the nature of *Defendants'* relationship with CGI:  a simple creditor-debtor relationship.  The second prong of the test that the Trustee proposes is that "(2) that the transaction was not conducted at arm's length."  (Dkt. 41 at ¶ 41).  But the Trustee does not plead any facts in this case that would lead to the inference that any of the subject transactions were conducted at less than arms-length.  The Complaint, for instance, includes no allegations that Dremonas personally pushed for CGI to enter into any transactions with Defendants, and includes no allegations that Defendants obtained a benefit on different terms than any other CGI member.[17]

---

[17] The Opposition reveals how absurd the Trustee's invocation of "self-dealing" is.  The Trustee explains that CGI issued a $44.5 million patronage rebate in 2016.  (Dkt. 1 at ¶ 26).  Yet, the Trustee accuses Dremonas of "divert[ing]" only $450,000 – merely 1% of the total – to his stores.  (Dkt. 41 at ¶ 48).

Nevertheless, in the Opposition, the Trustee baldly states, "[t]here are allegations of bad faith and self-dealing—while CGI was insolvent, Director Dremonas authorized payments to the Defendants for his benefit, depriving non-insider creditors of recoveries." (Dkt. 41 at ¶ 47). This is simply not true (which is, presumably, why the Trustee includes no citation). Again, the Complaint includes *no* allegations of bad faith or self-dealing on Dremonas' part. (*See generally*, Dkt. 1). In fact, **Dremonas was not even in attendance** at the board meeting in which CGI approved the $44.5 million 2016 patronage rebate. *See Samuels v. Coari*, No. 19-1011, Dkt. 105-1 at 1. For these reasons, the Trustee fails both prongs of his own test.

### E. THE TRUSTEE CANNOT STATE A CAUSE OF ACTION UNDER COUNTS THREE, FIVE, TEN, OR TWELVE, BECAUSE THE TRUSTEE DOES NOT ALLEGE ANY OBLIGATIONS TO AVOID

In Counts 3, 5, 10, and 12, the Trustee seeks to avoid transfers, not obligations, making these counts wholly duplicative of the Counts in which the Trustee seeks to avoid the exact transfers under the very same statutes. The Trustee is seeking the avoidance of "fraudulent obligations," yet the Trustee does not allege any obligations to avoid. The Trustee does not (and cannot) allege CGI fraudulently incurred an obligation to pay the Patronage Rebates. The Patronage Rebate obligation arose as a matter of law pursuant to the By-laws and CGI's status as a cooperative.

#### i. THE 2016 PATRONAGE REBATE WAS ALREADY SATISFIED

In his Opposition, the Trustee explains that, in Counts 3 and 5, he seeks to avoid the "alleged obligation CGI incurred to pay the patronage dividend for fiscal 2016, which obligation is defined as the '2016 Patronage Dividend.'" (Dkt. 41 at ¶ 52). This term is defined in the Complaint as: "On or about September 15, 2016, the Board authorized a $44.5 million patronage dividend, subject to final adjustments, for the fiscal year ending July 30, 2016." (Dkt. 1 at ¶ 26). In other words, the Trustee is seeking *in this case* to somehow avoid CGI's obligation, to all of its hundreds of patrons, to pay the

$44.5 million 2016 Patronage Rebate.[18]  As Defendants explained in their Motion, to do this, the Trustee would need to join as defendants the hundreds of CGI members to whom CGI pledged the 2016 Patronage Rebate.  (Dkt. 33 at 28 n.10).  The Trustee does not address that argument in his Opposition.

Moreover, in his Opposition, the Trustee clarifies that he seeks to avoid "'the underlying contract as a fraudulently incurred obligation.'"  (Dkt. 41 at 24 n.68) (quoting *In re Cent. Illinois Energy Coop*., 526 B.R. 786, 791 (Bankr. C.D. Ill. 2015)).  Even if a board resolution constituted a contract, the September 15, 2016 board resolution merely *recognized* the obligation to pay the Patronage Rebate, it did not *create* the obligation.  It was *CGI's By-laws* that created the obligation to pay the 2016 Patronage Rebate.  (Dkt. 1-3).  It is not plausible that CGI's By-laws would be considered a fraudulently incurred obligation.  Further, in the Opposition, the Trustee clarifies the allegations in his Complaint by stating "*the Trustee does not contend that any such obligation actually existed*…."  (Dkt. 41 at 24-25) (emphasis added).  This statement, in itself, dooms Counts 3 and 5.  If the Trustee does not contend that any obligation existed, then the Trustee plainly has not pleaded a claim for the avoidance of any obligation.[19]

### ii.  THE ALLOWANCE PAYMENTS

In the Opposition, the Trustee explains that, in Counts 10 and 12, he seeks to avoid "any obligation CGI may have had to make 'Allowance Dividend Payments' to Defendants."  (Dkt. 41 at par 53).  According to the Trustee, the purpose of an obligation avoidance claim is to "'avoid the underlying contract as a fraudulently incurred obligation.'"  (Dkt. 41 at 24 n.68) (quoting *In re Cent. Illinois Energy Coop*., 526 B.R. 786, 791 (Bankr. C.D. Ill. 2015)).  The Trustee never explains exactly what contract he seeks to avoid in Counts 10 and 12; whatever obligation the Trustee seeks to avoid in

---

[18] In other words, the Trustee does not merely seek to avoid only the obligation to pay Defendants their minute portion of the total rebate.

[19] The Trustee does not plead Counts 3 or 5 in the alternative.

these counts is insufficiently described.  Moreover (as above), the Trustee contends that there was not any obligation to make the "Allowance Dividend Payments to Defendants."  (Dkt. 41 at ¶ 53).  It is plain that the Trustee has not pleaded an obligation avoidance claim when he also contends there is no obligation to avoid.

**F.    THE TRUSTEE CANNOT STATE A CAUSE OF ACTION FOR UNJUST ENRICHMENT**

Unjust enrichment cannot be used as a theory of recovery where an express contract, oral or written, governs the parties' relationship.  *Gagnon v. Schickel*, 2012 IL App (1st) 120645, ¶ 25. Defendants moved to dismiss the Trustee's unjust enrichment claim (Count 18) because the Trustee pleads that express contracts governs the parties' relationships.  (Dkt. 33 at 28).  In response, the Trustee argues only that that a party can plead unjust enrichment in the alternative "as long as allegations of the express contract are not included in the count for unjust enrichment." (Dkt. 41 at 25- 26).  But the Trustee's allegations of express contract *are* included in the count for unjust enrichment. The Trustee incorporates paragraphs 1 through 41 into Count 18.  (Dkt. 1 at ¶ 170).  Within those paragraphs, the Trustee alleges that the "Unpaid Receivable" resulted from Defendants' breach of a contract:  the "Purchase Arrangement."  (Dkt. 1 at ¶ 33).  Similarly, the Trustee alleges that the patronage rebates were governed "by the By-laws and the Rules & Regulations," *i.e.*, by contracts.  (*Id.* at ¶ 24).  Accordingly, under the Trustee's own logic, dismissal is warranted.  Equally fatal to the Trustee's pleading is alternative pleading is only permitted if the movant believes that the underlying contract may be defected, *e.g.* a forgery.  However, a plaintiff cannot allege a breach of contract (and with no good faith belief that the contract is invalid) also allege an unjust enrichment claim in the alternative.  Such duplicative pleadings are not proper.

**G.    THE TRUSTEE CONSENTS TO THE DISMISSAL OF COUNT 19**

Defendants moved to dismiss the Trustee's disallowance claim in Count 19.  (Dkt. 33 at 29). The Trustee consents to the dismissal of this claim.  (Dkt. 41 at 7 n.1).

### H.    THE COURT SHOULD DENY LEAVE TO AMEND

The Trustee asks the Court to allow him to replead if the Court grants Defendants' Motion to

Dismiss.  (Dkt. 41 at ¶ 56).  "[A] district court may deny leave to amend for … futility."  *Gen. Elec.*

*Capital Corp. v. Lease Resolution Corp*., 128 F.3d 1074, 1085 (7th Cir. 1997) (citing FED. R. CIV. P.

15(a)).  There is no possible way to amend the Complaint to state a claim upon which relief could be

granted.  Accordingly, the Court should deny the Trustee leave to amend.

### III. CONCLUSION

WHEREFORE, for all these reasons explained above, Defendants respectfully request that this

Court dismiss Count 1 and Counts 3 through 19 and for any other relief that this Court deems equitable

and just.

Dated:  May 15, 2020                          Respectfully submitted,

**Pete's Fresh Market 4343 Corp., Pete's Fresh
Market Madison Corp., Pete's Fresh Market 5724
Corp., Pete's Fresh Market Bridgeview Corp.,
Pete's Fresh Market 2526 Corp., Pete's Fresh
Market 4700 Corp., West Lawn Foods, Inc., Pete's
Fresh Market 118th Corp., Pete's Fresh Market
Sibley Corp., 3720 West 95th Street, LLC, Pete's
Fresh Market Oak Park Corp., Royale Liquors,
LLC, and GM Warehouse, Inc., Defendants**

By: _____/s/ Adam B. Rome_____
                          One of Their Attorneys

Adam B. Rome (IL # 6278341)
Zachary P. Mulcrone (IL # 6300387)
GREIMAN, ROME & GRIESMEYER, LLC
Two North LaSalle, Suite 1601
Chicago, Illinois 60602
312-428-2750
arome@grglegal.com
zmulcrone@grglegal.com

## CERTIFICATE OF SERVICE

I certify that on May 15, 2020, the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to those registered to receive electronic notices via email transmission at the email addresses provided by them including:

Leo Oppenheimer, J. Benjamin King, Eric Madden, on behalf of Plaintiff Howard B. Samuels loppenheimer@rctlegal.com, bking@rctlegal.com;emadden@rctlegal.com;jharlin@rctlegal.com

Michael M. Eidelman, ESQ, Allison Hudson, & William Thorsness on behalf of Plaintiff Howard B. Samuels meidelman@vedderprice.com, ecfdocket@vedderprice.com; michael-eidelman-9405@ecf.pacerpro.com; 7610@ecf.pacerpro.com, ahudson@vedderprice.com, wthorsness@vedderprice.com,ewatt@vedderprice.com; william-thorsness-6297@ecf.pacerpro.com

I further certify that on May 15, 2020, I served the foregoing via U.S. Mail, postage prepaid, directly to those individuals listed below at the addresses listed from 2 N. LaSalle St., Chicago, Illinois before 5:00 p.m.:

| | |
|---|---|
| Kathryn M. Gleason | Ira Bodenstein |
| Ha Nguyen | Robert Fishman |
| Office of the US Trustee for Region 11 | Shaw Fishman Glantz & Towbin, LLC |
| 219 S. Dearborn St., Room 873 | 321 N. Clark St., Ste. 800 |
| Chicago, IL 60604 | Chicago, IL 60654 |
| Victor A. Des Laurier | Regina S. Kelborn |
| Diona Rogers | Victoria Guilfoyle |
| Thompson Coburn LLP | Blank Rome LLP |
| 55 E. Monroe St., 37th Floor | 1201 Market Street, Ste. 800 |
| Chicago, IL 60603 | Wilmington, DE 19801 |
| Mark V. Bossi | Mark Rabinowitz |
| Thompson Coburn LLP | Blank Rome LLP |
| One US Bank Plaza | One Logan Square 130 |
| St. Louis, MO 63101 | North 18th St. |
| | Philadelphia, PA 19109 |

/s/ Adam B. Rome
Adam B. Rome (IL # 6278341)
GREIMAN, ROME & GRIESMEYER, LLC
Two North LaSalle, Suite 1601
Chicago, Illinois 60602
Bus: (312) 428-2750Fax: (312) 332-2781
arome@grglegal.com

# EXHIBIT A



**CENTRAL GROCERS, INC.**    P: 815.553.8800    F: 815.553.8710    2600 West Haven Avenue    Joliet, Illinois 60433

October 19, 2016

To our Central Grocers Members and Shareholders:

As we described last May along with the third quarter rebate distribution, fiscal 2016 was shaping up to be a very challenging year as headwinds in top line sales created pressure on operating performance. All of our members, including our Strack & Van Til ("SVT") retail subsidiary, are feeling the effects of the hypercompetitive Chicagoland market.

SVT has been deeply impacted this year, particularly in the Ultra format which has experienced double digit sales declines. While strategies to recover these lost sales have been implemented, the resulting decrease in gross profit from sales has had a significant effect on their bottom line and ultimately SVT's valuation. The reduced valuation has resulted in a significant non-cash impairment charge in fiscal 2016, in addition to a Class B stock valuation of $78/share, down from last year's $148/share.

For Central Grocers, patronage rebates were $44.5 million versus $49.5 million in fiscal 2015. Historically, your coop has paid out the patronage rebate 90% in cash and 10% in optional Class B stock to qualifying members. However, this year we have to defer 30% of the rebate to comply with certain loan covenants under our bank credit agreement, in addition to suspending quarterly rebate payments. We realize this is not the news you were expecting and we are considering every alternative to pay out the deferred patronage as soon as possible.

Given the importance of market conditions and recent performance, along with Class B valuation and rebate considerations, we will reschedule the annual shareholder meeting to Tuesday, November 15th at The Carlisle, 435 E. Butterfield Road, Lombard, Illinois. A meeting held separate from the annual banquet will allow us to give the appropriate attention to these matters. Please plan on attending the meeting at 1:00 pm after a noon luncheon.

I look forward to seeing you on November 15th.

Sincerely,

Ken Nemeth
President & CEO

# EXHIBIT B



**SINCE 1917**

CENTRAL GROCERS, INC.     P: 815.553.8800     F: 815.553.8710     2600 West Haven Avenue     Joliet, Illinois 60433

October 28, 2016

**Fiscal 2016 Rebates**

Dear Member/Patron:

Enclosed please find your rebate check(s), along with your Store Rebate Statement(s). As recently communicated to you, this year we had to defer 30% of the rebate to comply with certain loan covenants under our bank credit agreement (this amount was recorded to your store purchase deposit account). We are considering all alternatives to pay out the deferred patronage as soon as possible.

Sincerely,

Ken Nemeth
President & CEO